Catherine Natsu LANNING, et al.,

v.

SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION AUTHORITY,
et al.

UNITED STATES of America,

v.

SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION
AUTHORITY.

Civ. A. Nos. 97–0593, 97–1161.

United States District Court,
E.D. Pennsylvania.

Aug. 13, 1997.

Jules Epstein, Lisa M. Rau, Kairys, Rudovsky, Kalman & Epstein, Philadelphia, PA, for Catherine Natsu Lanning, Altovise Love, Belinda Kelly Dodson, Denise Dougherty, and Lynne Zirilli.

Saul H. Krenzel, Saul H. Krenzel and Associates, Philadelphia, PA, for Southeastern Pennsylvania Transportation Authority (SEPTA) and Richard Evans, individually and in his official capacity as Chief of SEPTA Police Department.

Robert S. Libman, U.S. Dept. of Justice, Employment Litigation Section, Washington, DC, for United States.

Catherine Votaw, Assistant U.S. Attorney, Jules Epstein, Lisa M. Rau, Kairys & Rudovsky, Kalman & Epstein, Philadelphia, PA, Richard S. Ugelow, Robert S. Libman, Benjamin J. Blustein, U.S. Dept. of Justice, Employment Litigation Section, Washington, DC, for United States.

## MEMORANDUM

NEWCOMER, District Judge.

Presently before this Court are defendants' Motion to Dismiss, and the plaintiffs' responses thereto. For the following reasons, the Court denies in part and grants in part defendants' motion.

Also before this Court are Catherine Natsu Lanning, *et al.*'s Motion for Class Certification, and defendants' response thereto, and plaintiffs' reply thereto, and defendants' reply thereto. In addition, a class certification hearing was held on May 19, 1997, during which the Court heard oral argument in open court in support of and in opposition to plaintiffs' motion. For the following reasons, the Court grants plaintiffs' motion.

### I. Background

On April 17, 1997, this Court consolidated, for all purposes up to and including trial, *Lanning v. Southeastern Pennsylvania Transportation Authority,* Civil Action No. 97-0593, and *United States v. Southeastern Pennsylvania Transportation Authority,* Civil Action No. 97-1161. The *Lanning* action is a putative class action, challenging the physical fitness entrance examination used by the Southeastern Pennsylvania Transportation Authority ("SEPTA") for the position

of transit police officer on the grounds that it discriminates against women on the basis of their gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended ("Title VII"), 42 U.S.C. § 1983, and the Pennsylvania Human Relations Act.

The *Lanning* action was filed by five female applicants for the position of SEPTA transit police officer who were rejected by SEPTA on or about October 30, 1993 because they failed to successfully complete one of the components of the physical fitness test, *i.e.*, to run 1.5 miles in twelve minutes or less. Their complaint alleges that they are qualified and physically capable of performing the duties of SEPTA transit police officer, but that SEPTA's physical fitness examination has an adverse impact on women applicants and is neither justified by business necessity nor job-related. The *Lanning* plaintiffs and putative class members seek damages and injunctive and declaratory relief from SEPTA and the Chief of SEPTA's Police Department, Richard Evans.

Subsequent to the commencement of *Lanning* action, the United States filed a complaint alleging that SEPTA has engaged in, and continues to pursue, policies and practices which deprive women of employment opportunities because of their gender in violation of Section 707 of Title VII, 42 U.S.C. § 2000e–6. The United States' complaint specifically alleges that the physical fitness standards used by SEPTA for the position of transit police officer, including but not limited to the 1.5 mile running test, have an adverse impact on women and are not job-related for the position in question or consistent with business necessity. The United States seeks injunctive and declaratory relief,

as well as appropriate make-whole relief for individuals who have suffered loss or who will suffer loss as a result of SEPTA's discriminatory practices.

In order to place the instant dispute into context, the Court provides the following factual and procedural history. In 1993, all five named plaintiffs in the *Lanning* action completed written applications and took a written pre-employment examination administered by SEPTA to become transit police officers. These women and approximately twenty other women passed the written test and moved on to the next phase of the SEPTA application process.

The second phase of the SEPTA application process requires the applicant to take and pass a physical fitness entrance test. The physical fitness entrance test that was in place when the plaintiffs applied and were rejected was incorporated into the application process in 1991 and required applicants to perform the following tasks: (1) run one and one-half miles in 12 minutes or less, (2) bench press 117 pounds for 5 repetitions, (3) exert 100 pounds of grip strength with the dominant hand, (4) complete 30 military-style push-ups, (5) perform 45 sit-ups within two minutes, and (6) complete one pull-up from a dead hang.[1]

The running component of the physical entrance test is a threshold requirement. If the applicants do not complete the 1.5 mile run in twelve minutes or less, the applicants are barred from taking the remaining portions of the physical entrance test. In essence, a failing score on the running portion of the physical entrance test effectively eliminates the applicant from the entire SEPTA application process.[2]

---

**1.** The physical fitness test has changed since the *Lanning* plaintiffs were rejected. The physical fitness test as described in the text above was administered in 1991 and 1993. The 1991 and 1993 tests contained the above-mentioned "gym-based" test requirements and was the test that the *Lanning* plaintiffs took. In 1996, SEPTA administered another physical fitness test. The 1996 physical fitness test, however, was changed from a gym-based test to a "criterion-based" test. The only portion of the 1991 and 1993 tests which was part of the 1996 test was the 1.5 mile run with its twelve minute pass/fail time limit. All other portions of the 1991 and 1993 tests

were eliminated and replaced with criterion-based tasks. The criterion-based tasks consist of the following: (1) a turnstile jump, (2) a dummy drag, (3) surmounting a six-foot high chain-link fence, and (4) a weapon-test fire.

**2.** Other portions of the entire SEPTA application process include a background investigation, a polygraph examination, a medical examination, a substance abuse screen and possession of a valid driver's license. Although it is not entirely clear from the record before the Court, it appears that these application requirements are administered

On October 30, 1993, SEPTA administered the first step of the physical fitness test of the police force application process. All five of the named plaintiffs as well as every single other female applicant who tested in 1993—save one—were unable to meet SEPTA's cut-off of twelve minutes on the one and one-half mile run.[3] Not one of the applicants who failed the running test was permitted to proceed with the remainder of the physical tests.

Believing that they were denied an equal employment opportunity, all five named plaintiffs herein filed complaints with the Pennsylvania Human Relations Commission ("PHRC") between April 20, 1994 and April 28, 1994. On February 1, 1996, the PHRC issued a finding of probable cause that discrimination occurred on each plaintiff's complaint. On December 11, 1996, the Equal Employment Opportunity Commission ("EEOC") issued a right to sue letter to each plaintiff. On January 28, 1997, the plaintiffs filed a complaint with this Court.

On March 26, 1996, the Civil Rights Division of the United States Department of Justice notified counsel for SEPTA that it had commenced an investigation into the employment practices of SEPTA. In this letter, the United States notified SEPTA that it had received information that SEPTA's police department may be engaged in a pattern or practice of sex discrimination. The United States requested that SEPTA cooperate in its investigation of SEPTA's employment practices.

In this regard, on April 10, 1996, the United States by letter requested that SEPTA produce certain information and documents in connection with the United States' investigation of the employment practices of SEPTA. Specifically, the United States requested information and/or documents regarding twenty-one discrete areas. In response, by letter dated May 17, 1996, counsel for SEPTA informed the United States that it would

not produce the information and/or documents sought in requests 17–21 because it would be duplicative of the proceedings that were then pending before the PHRC. Additionally, SEPTA refused to produce any of the information and/or documents sought in requests 1–16 because SEPTA did not know "of [any] civil action asserting that SEPTA has engaged in pattern or practice discrimination against women, and since the [Department of Justice] has offered no reasonable basis to support its request for the voluminous information that it requests...." (United States' Resp. Defs.' Mot. Dismiss at Exh. 5).

By letter dated May 20, 1996, the United States confirmed its receipt of SEPTA's May 16, 1996 letter. In this letter, the United States renewed its request for the documents and information requested in its letter of April 10, 1996. By letter dated June 11, 1996, SEPTA responded to the United States' letter of May 20, 1996. SEPTA informed the United States that it could obtain information with respect to the 1.5 mile run from the PHRC. With respect to the United States' remaining requests, SEPTA questioned whether a governmental entity could bring charges of "pattern and practice discrimination" in court based merely on raw statistical disparity between women and men in SEPTA's employment. SEPTA informed the United States that it would not comply with its request for information and/or documents.

By Letter dated February 4, 1997, the United States invited SEPTA to enter into settlement discussions in an attempt to resolve this matter. After receiving this letter, SEPTA's counsel specifically advised the United States that he did not believe settlement negotiations would be fruitful. Counsel for SEPTA was thereby advised that the United States would therefore file its complaint promptly but that the United States would be willing to enter into settlement

---

to the applicant after he or she takes and passes all parts of the physical entrance test.

**3.** By contrast, 197 of the 412 (47.8%) male applicants who completed the run in October 1993 finished within the required 12 minute time limit. The *Lanning* plaintiffs allege that when this running test was administered on different occa-

sions to applicants (presumably in 1991 and 1996), it resulted in a disparate impact on female applicants with a significantly larger percentage of female applicants failing to complete the one and one-half mile run within the twelve minutes as compared to male applicants.

discussions at any time in the future. This conversation was confirmed by letter dated February 12, 1997 from the United States' counsel to counsel for SEPTA. On February 18, 1997, the United States filed its complaint against SEPTA in this Court. As mentioned above, the *Lanning* case and the United States' case have been consolidated for all purposes up to and including trial.

The *Lanning* plaintiffs presently move for class certification. Plaintiffs request certification of the following class:

> past, present, and future female applicants for employment as SEPTA police officers who have been or will be denied employment by reason of their inability to meet the physical entrance requirement of running 1.5 miles in 12 minutes or less.

Plaintiffs argue that the general requirements of Fed.R.Civ.P. 23(a)(1)–(4) are satisfied. Plaintiffs also contend that class certification is proper under Fed.R.Civ.P. 23(b)(2). Defendants argue that certification is not proper because the plaintiffs cannot satisfy the numerosity, commonality and the adequacy of representation requirements of Rule 23(a). In addition, defendants argue that certification is not proper under Rule 23(b)(2).

Subsequent to the filing of the *Lanning* plaintiffs' motion for class certification, defendants filed a motion to dismiss with respect to the *Lanning* action and the United States' action. Defendants first argue that the United States' complaint should be dismissed for failing to satisfy the jurisdictional requirements under Title VII, namely the requirement that the parties attempt to conciliate the dispute. In addition, defendants argue that the *Lanning* plaintiffs and the United States cannot challenge the non-running components of the physical entrance test because (1) these components were not challenged at the EEOC/PHRC hearings, and thus not administratively exhausted, (2) these claims are moot, (3) plaintiffs lack standing to challenge the non-running components, and (4) plaintiffs cannot set forth a prima facie case for the non-running components of the fitness test since no disparate impact can be demonstrated. Defendants further argue that the *Lanning* plaintiffs'

§ 1983 claims are barred by the statute of limitations. Likewise, defendants contend that the 1991 applicants' claims under § 1983 and Title VII are barred by the statutes of limitations.

In response, the United States contends that all of defendants' arguments are lacking in merit, and as such, it asks this Court to deny defendants' motion. Although the *Lanning* plaintiffs rejoin that they have standing to challenge the non-running components of the physical entrance test, for the sake of making this litigation more focused and manageable, the *Lanning* plaintiffs do not object to narrowing their claim to the issue of whether the 12 minute, 1.5 mile run violates Title VII, § 1983 and state law. Plaintiffs, however, agree to limit their claim with the following provisos that (1) their prayer for relief remain the same and if other portions of the hiring test are invalidated, plaintiffs (and a class if class certification is granted) are entitled to the benefit of such a ruling in the determination of damages and relief and (2) to the extent that this Court deems it relevant evidence to the challenge of the 1.5 mile run test, plaintiffs are entitled to present evidence and examine witnesses regarding the other components of the physical fitness test.

Because the Court finds that the issue of class certification is necessarily connected with and dependent upon the issues presented in defendants' motion to dismiss, the Court will first resolve the issues raised in defendants' motion to dismiss and then decide whether class certification is appropriate in this case.

## II. Defendants' Motion to Dismiss

### A. Rule 12(b)(6) Standard

Pursuant to Rule 12(b)(6), a court should dismiss a claim for failure to state a cause of action only if it appears to a certainty that no relief could be granted under any set of facts which could be proved. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984). Because granting such a motion results in a determination on the merits at such an early stage of a plaintiff's case, the district court "must

take all the well pleaded allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Colburn v. Upper Darby Township,* 838 F.2d 663, 664–65 (3d Cir.1988) (quoting *Estate of Bailey by Oare v. County of York,* 768 F.2d 503, 506 (3d Cir.1985)). If the facts alleged in the Complaint, even if true, fail to support the plaintiff's claim, dismissal of the claim is appropriate. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988).

### B. Administrative Prerequisites for the United States

The Court will first address whether the United States has satisfied the jurisdictional prerequisites to filing suit under Title VII. Title VII prohibits discrimination in employment on the basis of race color, sex, religion and national origin and also prohibits retaliation against individuals for complaining about acts that they reasonably believe to be unlawful under Title VII. Under Section 706 of Title VII, 42 U.S.C.A. § 2000e–5, an individual who believes that she has been discriminated against by a public employer in violation of Title VII may file a charge of discrimination with the EEOC. The power to sue public employers based on an individual charge of discrimination filed with the EEOC is reserved to the Attorney General under Section 706(f)(1) of Title VII, 42 U.S.C.A. § 2000e–5(f)(1). In order for the United States to file suit on behalf of an individual who has filed a charge of discrimination under Section 706 of Title VII, certain administrative prerequisites must be met, including the filing by the individual of a timely

charge of discrimination, a finding of reasonable cause by the EEOC, and the failure of efforts by the EEOC to conciliate the matter.

The instant suit, however, is not brought pursuant to Section 706 of Title VII. Rather, the United States has filed the instant complaint pursuant to Section 707 of Title VII, 42 U.S.C. § 2000e–6.[4] Under Section 707, the Attorney General has independent authority to file suit against a public employer whenever she has "reasonable cause" to believe there is a pattern or practice of discrimination. It is well-established that the administrative requirements of Section 706, including the obligation to engage in conciliation, do not apply to cases brought by the Attorney General under Section 707. *See, e.g., United States v. Masonry Contractors Ass'n of Memphis, Inc.,* 497 F.2d 871, 875–76 (6th Cir.1974); *United States v. McHenry County,* No. 94–5086, 1994 WL 447419 (N.D.Ill. Aug. 17, 1994); *United States v. City of Yonkers,* 592 F.Supp. 570 (S.D.N.Y. 1984). Indeed, the plain language of Section 707 manifestly indicates that the only prerequisite to the United States filing suit under Section 707 is that the Attorney General have reasonable cause to believe there is a pattern or practice of discrimination. Thus, the Court perforce rejects defendants' argument that the United States' complaint should be dismissed for failure to conciliate.[5]

### C. Plaintiffs' Challenge to the Non–Running Components of SEPTA's Physical Fitness Test

The remaining majority of defendants' motion to dismiss is aimed at dismissing the claims contained in the *Lanning* complaint and the United States' complaint that chal-

---

4. Section 707 of Title VII states in relevant part:
 (a) Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this title and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General may bring a civil action in the appropriate district court of the United States by filing with it a complaint (1) signed by him (or in his absence the Acting Attorney General) (2) setting forth facts pertaining to such pattern or practice and (3) requesting such relief, including an application

for a permanent or temporary injunction, restraining order or other order against the person or persons responsible for such pattern or practice, as he deems necessary to insure the full enjoyment of the rights herein described. 42 U.S.C. § 2000e–6(a).

5. The United States also argues that it attempted to conciliate the instant dispute with SEPTA even though the law does not require such conciliation. The Court need not decide this issue because of the Court's previous conclusion that the United States does not have to attempt conciliation.

lenge the non-running components of SEP-TA's physical fitness test. For a variety of reasons, defendants argue that this Court should dismiss plaintiffs' claims relating to the components of the physical fitness test other than the 12 minute, 1.5 mile running requirement for all applicants to the position of SEPTA transit police officer. The Court will now address these arguments *seriatim.*

### 1. Exhaustion of Administrative Remedies

■ With respect to the *Lanning* plaintiffs, SEPTA argues that these plaintiffs cannot challenge the non-running components of the physical fitness test because the jurisdictional requirements under Title VII have not been satisfied. Before a Title VII complaint can be brought in federal district court, the statutory administrative remedies of Title VII must be exhausted before the EEOC or other appropriate administrative agency. *See* 42 U.S.C. § 2000e–5(e)–(f). Title VII provides that the EEOC is to endeavor to resolve meritorious charges of unlawful employment practices by the informal method of conference, conciliation and persuasion. 42 U.S.C. § 2000e–5(b). If EEOC conciliation fails, the aggrieved party, in regards to charges of unlawful employment practices in the state and local public sector, may bring a de novo court action in federal district court. 42 U.S.C. § 2000e–5(f)(1).[6]

In order to ensure that the parties comply with the spirit of Title VII, the federal courts have held that there must be some prudential limitations on the district courts so that the EEOC will have the first opportunity to examine the allegations of discrimination. *See, e.g., Ostapowicz v. Johnson Bronze Co.,* 541 F.2d 394, 398 (3d Cir.1976); *James v. International Business Machines Corp.,* 737 F.Supp. 1420, 1425 (E.D.Pa.1990). Thus the courts have generally held that the scope of the civil action in the district court is defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. *Ostapowicz,* 541 F.2d at 399 (citing *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th

Cir.1970)). Courts must examine the original, administrative charge to determine whether the allegations raised in the federal court complaint had been raised in the underlying agency charge or are reasonably related to the underlying agency's investigation.

In this case, SEPTA argues that the *Lanning* plaintiffs are barred from challenging the non-running components of the physical fitness test because these components were not raised by the *Lanning* plaintiffs in their PHRC/EEOC charges. The Court disagrees with defendants' assessment of the PHRC/EEOC charges. Each one of the *Lanning* plaintiffs stated in their charges that they had been subjected to a physical agility requirement that "included, *among other tests,* that all applicants run a mile and a half in 12 minutes or less. . . ." (emphasis added). Additionally, the plaintiffs alleged that "SEPTA's *physical agility test* is not sufficiently related to the exigencies of transit security duties to be a valid hiring criteria in spite of its disparate impact on women." Finally, the charges stated that "respondents *discriminated against [us] and other female applicants because of gender in the hiring process by administering a discriminatory test* that had a disproportionate impact on women. . . ." (emphasis added). It is clear from these statements that named plaintiffs were challenging more than just the running component of the physical fitness test during the administrative proceedings.

Moreover, the PHRC investigated the entire physical entrance test for more than two years and issued probable cause findings that the entire physical entrance test was discriminatory. The PHRC actually characterized the charges as alleging that SEPTA engaged in "unlawful discrimination with respect to its maintaining a physical fitness test which has a disparate impact on female applicants." (PHRC Finding of Probable Cause). The PHRC also concluded that "probable cause exists to credit the allegations that [SEPTA]

---

**6.** In a state like Pennsylvania with a state or local agency authorized to grant or seek relief from employment practices made unlawful by Title VII, known as deferral states, an individual must file his or her charge of discrimination

within 300 days after the alleged discrimination act to be timely. In a state without such state or local agency, the individual must file his or her charge within 180 days of the alleged discrimination to be timely. 42 U.S.C. § 2000e–5(e).

maintains a physical fitness test which has a disparate impact on female applicants, . . . ." (PHRC Finding of Probable Cause). Finally, the PHRC recommended that SEPTA not only eliminate the 12 minute, 1.5 mile run but also that it "cease and desist from reliance on any other pre-employment physical fitness test device that disproportionately excludes female applicants unless [SEPTA] can demonstrate the job-relatedness of the test device." (PHRC Terms of Adjustment ¶ 1). In light of the foregoing, including a review of the PHRC/EEOC charges, the investigation conducted by the PHRC, and the findings by the PHRC, the Court finds that the portion of the *Lanning* complaint which challenges the non-running components of the physical fitness test does not go beyond the scope of the PHRC/EEOC charges. Thus, the Court finds that the *Lanning* plaintiffs did exhaust administrative remedies with respect to their claim that the non-running components of SEPTA's physical fitness test violate Title VII.

### 2. Mootness

■ With respect to both the *Lanning* complaint and the United States' complaint, SEPTA argues that all claims concerning the non-running components of the 1991 and 1993 tests are moot because there is no present harm due to that fact that SEPTA has abandoned the use of the gym-based tasks. SEPTA has submitted the affidavit of Chief Evans in support of its contention that SEPTA has abandoned the use of the gym-based tasks during administration of the physical fitness test. In opposition, the United States contends that SEPTA's mootness argument fails under the "voluntary cessation" doctrine.

■ The Supreme Court has stated that "as a general rule, voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot." *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953)). The heavy burden of demonstrating mootness is on the moving party. *Id.* at 631, 73 S.Ct. at 896–97 (quoting

*W.T. Grant Co.,* 345 U.S. at 632–33, 73 S.Ct. at 897–98). The general test for mootness, as articulated by the Supreme Court in Davis, is that a case becomes moot only if:

(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and

(2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.

*Id.* at 631, 73 S.Ct. at 896–97 (citations and internal quotations omitted). The Supreme Court has further explained that voluntary cessation of a allegedly unlawful practice does not divest a federal court of its power to ascertain the legality of that practice. *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 1074, 71 L.Ed.2d 152 (1982). Significantly, the Supreme Court stated that the voluntary cessation of an unlawful practice "is a matter relating to the exercise rather than the existence of judicial power." *Id.*

Applying these well-reasoned principles to the facts of this case, the Court finds that the claims with respect to the non-running components of SEPTA's physical fitness test are not moot. On a motion to dismiss, the Court must accept as true the United States' allegation that SEPTA's physical fitness test violates Title VII; this includes the non-running components. As to the first prong of the *Davis* test, even if SEPTA did abandon certain components of its physical fitness test in 1996, as the Evans affidavit suggests, this was done after the *Lanning* plaintiffs filed their charges of discrimination with the PHRC and the EEOC. Thus, the Evans affidavit provides this Court with no reassurance that SEPTA will not reinstitute any or all of these components in the future.

Even if SEPTA was to submit an affidavit stating that SEPTA did not intend to reinstitute the abandoned components of its physical fitness test, this would not be enough to establish mootness where SEPTA: (1) has consistently maintained that the abandoned components of its physical fitness test were lawful; (2) is vigorously defending its position; and (3) has refused to enter into a voluntary resolution of the matter. *See*

*United States v. New York City Transit Auth.*, 846 F.Supp. 227, 228 (E.D.N.Y.1994), *rev'd on other grounds*, 97 F.3d 672 ·(2d Cir.1996).

SEPTA has also failed to meet the second prong of the *Davis* mootness test, *i.e.*, SEPTA's abandonment of certain components of its physical fitness test could not possibly have "completely and irrevocably eradicated the effects of the alleged violation." Assuming, as this Court must for the purposes of a motion to dismiss, that the components of SEPTA's physical fitness which have been abandoned violated Title VII, SEPTA has not "completely and irrevocably eradicated the effects" of these components because SEPTA has not identified and compensated individual victims of these unlawful components. *See International Bhd. of Teamsters v. United States*, 431 U.S. 324, 341–42, 97 S.Ct. 1843, 1857–58, 52 L.Ed.2d 396 (1977); *United States v. City of Warren*, 759 F.Supp. 355, 365–66 (E.D.Mich.1991). Because SEPTA cannot satisfy the requirements of *Davis*, this Court will reject its mootness argument.

Additionally, the United States claims concerning the non-running components of SEPTA's physical fitness test are not moot because they are relevant to the issue of relief to individual victims of SEPTA's unlawful 1.5 mile run requirement. If the United States prevails on its challenge to SEPTA's 1.5 mile run requirement, it intends to seek full, make-whole relief for the women who were adversely affected by this requirement, including, *inter alia*, offers of employment, back pay, remedial seniority, remedial pension contributions and credit, and other job benefits. SEPTA may oppose the award of such relief by arguing that women who failed the 1.5 mile run are unable to demonstrate that they would have passed the remaining lawful components of SEPTA's physical fitness test. After a finding of a pattern or practice of discrimination with respect to the 1.5 mile run, female applicants who failed the 1.5 mile run would be presumptively entitled

to relief and SEPTA would bear the burden of persuasion in proving that such women would not have been hired as transit police officers. Accordingly, the lawfulness of the components of SEPTA's physical fitness test other than the 1.5 mile run is clearly relevant to the issue of relief to individual victims of SEPTA's 1.5 mile run requirement; the Court would be justified in denying SEPTA's mootness argument on this ground alone.

### 3. Standing

■ Defendants also move to dismiss the non-running component claims on the grounds that both the *Lanning* plaintiffs and the United States lack standing to challenge these components. SEPTA argues that the United States does not have standing because the United States cannot demonstrate that any female applicant in 1991, 1993 or 1996 successfully passed the 1.5 mile run requirement but failed any other component of the fitness test. SEPTA and Chief Evans argue that the *Lanning* plaintiffs lack standing because they did not take the non-running components of the physical fitness test in 1993 and did not take the exams in 1991 and 1996.[7]

■ Under the doctrine of standing, a litigant must demonstrate, *inter alia*, that he has suffered an injury-in-fact, that the challenged actions are the cause of the injury, and the injury is likely to be redressed by a favorable decision of the court. *See, e.g., Duke Power Co. v. Carolina Env't Study Group, Inc.*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978). To satisfy the "injury-in-fact" element of the standing test, "the party seeking review [must] be himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734–35, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636 (1972).

In this case, defendants argue that plaintiffs do not have standing to challenge the non-running components of SEPTA's physical fitness test because they lack an injury-in-fact. Defendants argue that the plaintiffs

---

**7.** Although the *Lanning* plaintiffs have agreed to limit their claim to its challenge of the 1.5 mile run in the interests of manageability and economy, the *Lanning* plaintiffs do argue that they have standing to challenge the non-running components as a matter of law. For the purpose of completeness, and because the United States' standing argument necessarily overlaps the *Lanning* plaintiffs' argument, the Court will address SEPTA's standing argument with respect to the *Lanning* plaintiffs.

cannot claim an injury-in-fact because (1) any woman who failed the running portion of the test never took the non-running components of the test, and as such, they cannot claim that they were injured by the non-running portions of the test and (2) any woman who passed the running test also passed the non-running portions of the test, and as such, they cannot claim that they were injured by the test. In support of its argument, defendants cite three employment discrimination cases in which the plaintiffs therein were found not to have standing to challenge the examination in question because they did not take the examination.[8] Despite defendants' argument to the contrary, this Court finds that the plaintiffs have standing to challenge the non-running components of SEPTA's physical fitness test.

To begin, the Court finds that the United States has standing to challenge the non-running components of SEPTA's physical fitness test on behalf of the women who may have passed the running test but failed the non-running components in 1991. Section 707(a) does not specify a time period within which the Attorney General must file suit, *City of Yonkers*, 592 F.Supp. at 586, thus, in effect, there is no statute of limitations for § 707 cases brought by the Attorney General. Therefore, the United States may bring suit on behalf of any woman applicant who was administered and failed any portion of the 1991 test. Within this group of 1991 women applicants, there may exist some women who passed the running test yet failed the other non-running components of the test.[9] Undoubtedly, the United States could assert their rights in a Section 707 case, thus bestowing standing upon the United States.[10] Based on this reason alone, the Court finds that the United States has standing to challenge the non-running components of the test.

More importantly, the Court finds that both the United States and *Lanning* plaintiffs have standing to challenge SEPTA's physical fitness test, regardless of whether they were administered, passed or failed the non-running components of SEPTA's test. In its motion, SEPTA attempts to avoid judicial scrutiny and defeat standing by micro-compartmentalizing its physical fitness test. In essence, SEPTA attempts to separate its single physical fitness test into separate, discrete physical fitness tests. Under SEPTA's characterization of its test, SEPTA is free to argue that plaintiffs do not have standing to challenge the other components of the physical fitness test because in actuality each part of the physical fitness test is in itself a separate test. The Court must, however, reject SEPTA's narrow view of its test and standing as contrary to reality and the law.

The Court finds that the *Lanning* plaintiffs and the United States both have standing to challenge the legality of SEPTA's physical fitness test. The *Lanning* plaintiffs, as well as the potential class members, have taken the first part of the SEPTA physical test—the running component. Additionally, these plaintiffs and class members have failed the running component of the test allegedly because the test has an adverse impact on women and is not justified by business necessity nor job-related in violation of Section 706 of Title VII. On these facts,

---

8. The defendants cite *Wells v. United States*, 578 F.Supp. 794 (D.D.C.1983), *Davis v. County of Los Angeles*, 566 F.2d 1334 (9th Cir.1977), *vacated*, 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979), and *Rudder v. District of Columbia*, 890 F.Supp. 23 (D.D.C.1995), *aff'd*, 99 F.3d 448 (1996). The Court finds that these cases do not support defendants' position. These cases simply stand for the proposition that a person does not have standing to challenge an allegedly discriminatory examination unless the person has taken the examination. In this case, all of the named plaintiffs and potential class members have taken the physical fitness test. Thus, these cases are inapplicable to the instant case.

9. The United States has been unable to obtain the results of the 1991 test because of SEPTA's recalcitrant behavior in discovery. Thus, the Court cannot at this juncture rule that the United States does not have standing based on the 1991 applicants' results because it simply does not have this information before it.

10. To the extent that SEPTA may argue that the United States' claims on behalf of the 1991 women applicants is moot because SEPTA has eliminated the gym-based tasks from its physical fitness test, and as such, the 1991 applicants' claims are moot, the Court rejects this argument for the reasons articulated in Part II.C.2. of this opinion.

the *Lanning* plaintiffs and class members have set forth an injury-in-fact that gives them standing to challenge SEPTA's physical fitness test. Additionally, the United States has standing to sue based on the fact that it sues on behalf of the women applicants who have experienced the same alleged discrimination as that experienced by the *Lanning* plaintiffs.

Because the United States and the *Lanning* plaintiffs proceed on a disparate impact theory, SEPTA cannot attempt to eliminate any claim with respect to the non-running components of SEPTA's test at this point in the litigation. In a disparate impact case, "the complaining party shall demonstrate that each particular practice causes a disparate impact," unless "the complaining party can demonstrate to the court that the elements of respondent's decisionmaking [sic] process are not capable of separation for analysis." 42 U.S.C. § 2000e–2(k)(1)(B). This language recognizes that in many disparate impact cases the elements of a defendant's decision-making process may not be capable of separate analysis and that in those cases the decision-making process may be analyzed as one whole.

The plaintiffs argue that in this case, SEPTA's decision-making process may not be capable of separate analysis, and as such, they should be permitted to offer evidence with respect to the entire test as it relates to SEPTA's decision-making process. For example, the *Lanning* plaintiffs allege that SEPTA has used the same technique and decision-making process to develop all of the components of its physical fitness test including the running component. The *Lanning* plaintiffs and the United States will challenge the validity of SEPTA's technique in developing its physical fitness requirements. Thus, if the Court finds that SEPTA's decision-making process was invalid and unlawful, the entire physical fitness test may be found to be tainted and would have to eliminated. However, this decision cannot be made at this stage because discovery has not yet closed, and as such, all of the relevant facts are not before the Court which would allow the Court to make this decision.

In sum, the Court finds that the plaintiffs have demonstrated their standing to challenge SEPTA's physical fitness test. However, a decision as to whether SEPTA's decision-making process can be separately analyzed, or whether it must be analyzed as a whole, cannot be made at this point. It would be improper for the Court to conclude at this time that plaintiffs cannot challenge the decision-making process behind the non-running components of SEPTA's test. Thus, in light of the fact that this case proceeds on a disparate impact theory, the Court perforce rejects defendants' standing argument.

### 4. No Disparate Impact can be Demonstrated

■ Defendants also argue that this Court should dismiss the United States' claim that challenges the non-running components of its physical fitness test because the United States simply cannot demonstrate that the non-running components of the test have a disparate impact on women. In making this argument, SEPTA relies on the affidavit of Chief Evans. As such, the Court will treat this portion of defendants' motion to dismiss as a motion for summary judgment. *See* Fed.R.Civ.P. 12(b).

The Court, however, will deny defendants' summary judgment motion as premature. Pursuant to this Court's Order dated April 23, 1997, fact discovery does not close until August 22, 1997. Moreover, expert discovery does not commence until September 5, 1997 and does not close until September 26, 1997. The Order, further, contemplates that motions for summary judgement will not be filed until October 10, 1997. Because fact discovery is still under way and expert discovery has not even started, SEPTA's motion for summary judgment is denied as premature. The Court finds that this decision is well-founded especially in light of the fact that many relevant facts needed by the United States to defend against SEPTA's motion are in the possession of SEPTA. *See Costlow v. United States,* 552 F.2d 560 (3d Cir. 1977) ("where the facts are in the possession of the moving party a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a mat-

ter of course") (citing *Ward v. United States,* 471 F.2d 667, 670–71 (3d Cir.1973)).[11]

### D. The Statute of Limitations

Defendants argue that the *Lanning* plaintiffs' § 1983 claims are barred by the statute of limitations. Defendants also argue that the § 1983 and Title VII claims of the 1991 women applicants, who are putative class members, are also barred by the statute of limitations. Interestingly, the *Lanning* plaintiffs do not rejoin that their § 1983 claims are not barred by the statute of limitations. However, the *Lanning* plaintiffs do argue that the § 1983 and Title VII claims of the 1991 applicants are not barred by the statute of limitations.

In § 1983 actions, the applicable period of limitations is borrowed from the statute of limitations on personal injury actions of the state in which the alleged violations occurred. *Wilson v. Garcia,* 471 U.S. 261, 275, 105 S.Ct. 1938, 1946, 85 L.Ed.2d 254 (1985). The statute of limitations for a § 1983 claim arising in Pennsylvania is two years. *Osei–Afriyie v. Medical College of Pennsylvania,* 937 F.2d 876, 885 (3d Cir. 1991). A § 1983 cause of action accrues on the date when a plaintiff knew or should have known that his or her rights had been violated. *Genty v. Resolution Trust Corp.,* 937 F.2d 899 (3d Cir.1991).

Applying these principles, the Court finds that the *Lanning* plaintiffs' § 1983 claims are barred by the statute of limitations. Clearly, plaintiffs' cause of action under § 1983 accrued without the previous two-year period from the date of the filing of their instant complaint. Additionally, plaintiffs have not demonstrated that the statute of limitations for their § 1983 claim should be tolled for any equitable reasons. Thus, the Court finds that plaintiffs' § 1983 claims are barred. Likewise, the Court finds that any § 1983 claims that the 1991 applicants may

possess are barred by the statute of limitations.[12]

### III. Plaintiffs' Motion for Class Certification

Federal Rule of Civil Procedure 23(c)(1) provides that class certification shall be determined "as soon as practicable after the commencement" of the action. Fed. R.Civ.P. 23(c)(1). A determination of class certification does not focus on whether plaintiffs have stated a cause of action or will prevail on the merits but rather is limited exclusively to whether the requirements of Rule 23 have been satisfied. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974); *Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 252 (3d Cir.1975); *Sala v. National R.R. Passenger Corp.,* 120 F.R.D. 494, 495 (E.D.Pa.1988). This determination is vested in the sound discretion of the trial court. *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100, 101 S.Ct. 2193, 2202, 68 L.Ed.2d 693 (1981); *Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468, 471–72 (5th Cir.1986). Since the court may amend an order granting class certification, *In re School Asbestos Litigation,* 789 F.2d 996, 1011 (3d Cir.1986), in a close case the court should rule in favor of class certification. *Kahan v. Rosenstiel,* 424 F.2d 161, 169 (3d Cir.1970).

To obtain class action certification, plaintiffs must establish that all four requisites of Rule 23(a) and at least one part of Rule 23(b) are met. *Wetzel,* 508 F.2d 239.

### A. Rule 23(a) Requirements

Rule 23(a) provides that:

One or more members of the class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the

---

**11.** Additionally, the Court finds that SEPTA's refusal to provide basic discoverable information to the United States and its overall recalcitrant behavior during the course of discovery has denied the United States a sufficient opportunity for discovery such that SEPTA's motion is premature.

**12.** The Court also finds that the 1991 applicants' Title VII claims are time-barred for failure to file a charge of discrimination with the EEOC or PHRC within the 300–day statutory time limit. The Court's discussion with respect to this issue is provided *infra* at Part III.A.1.

claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a)(1)–(4).

The United States Court of Appeals for the Third Circuit has succinctly explained the purposes for which Rule 23(a) was created: "The requirements of Rule 23(a) are meant to assure both that class action treatment is necessary and efficient and that it is fair to the absentees under the particular circumstances." *Baby Neal v. Casey,* 43 F.3d 48, 55 (3d Cir.1994). The numerosity requirement addresses the concern of necessity, and the final three requisites are applied in order to determine "whether the class action can be maintained in a fair and efficient manner." *Id.*

### 1. Numerosity

■ The district court can make a common sense determination whether it would be difficult or inconvenient to join all class members as named parties under the particular circumstances of a case. *See, e.g., Senter v. General Motors Corp.,* 532 F.2d 511, 523 (6th Cir.1976); *Peil v. National Semiconductor Corp.,* 86 F.R.D. 357, 365 (E.D.Pa.1980). Courts have recognized the absurdity of setting numerical cut-offs below which a class will not be certified. *See Moskowitz v. Lopp,* 128 F.R.D. 624, 628 (E.D.Pa.1989). Indeed, courts have certified classes with as few as fourteen persons. *Grant v. Sullivan,* 131 F.R.D. 436 (M.D.Pa.1990). This court has also stated that the numerosity requirement is to be applied liberally in gender and race discrimination suits and certified a class of 66 African American women who worked at SEPTA. *Frazier v. SEPTA,* 123 F.R.D. 195 (E.D.Pa.1988).

In this case, the numerosity requirement has become the main battleground between defendants and plaintiffs; it is with respect to numerosity that defendants set forth their most vigorous defense against certification. Thus, the Court will devote most of its discussion with respect to class certification to the subject of numerosity. However, in order to eliminate any suspense, the Court states that the numerosity requirement has been satisfied in this case.

As stated previously, plaintiffs ask this Court to certify the following class:

past, present, and future female applicants for employment as SEPTA police officers who have been or will be denied employment by reason of their inability to meet the physical entrance requirement of running 1.5 miles in 12 minutes or less.

In this class, plaintiffs contend that there are four groups: (1) the 1991 applicants, (2) the 1993 applicants, (3) the 1996 applicants, and (4) future applicants ("futures"). Plaintiffs argue that this Court could properly find that numerosity has been satisfied in this case just by counting the 1993 applicants. However, plaintiffs contend that the Court should also consider the 1991 applicants, the 1996 applicants and futures in its numerosity determination.

In response, SEPTA argues that the numerosity requirement cannot be satisfied in this case. SEPTA argues that the Court cannot consider the 1991 applicants because their Title VII and § 1983 claims are time-barred. Additionally, SEPTA argues that the Court cannot consider the futures because they may obtain relief, if in fact they sustain an injury, in the future. Since the Court cannot consider the futures and 1991 applicants, SEPTA argues that plaintiffs cannot satisfy numerosity because it is not impracticable to join the 22 additional applicants who failed the 1993 test.

■ As an initial matter, the Court finds that plaintiffs have satisfied the numerosity requirement just based on the twenty-two women who failed the 1993 test. Although in most cases numerosity would not be satisfied if only twenty-two persons had to be joined, the Court finds that numerosity is satisfied here. Although plaintiffs have the names, social security numbers and names of the street of where the 1993 applicants live, it would be almost impossible for plaintiffs to find these women because they do not know in what town, city or municipality that these women live. In addition, plaintiffs do not have the phone numbers for these women. It would seem that joinder in this case is impracticable without the above-mentioned

information, especially in light of the fact that this case is headed for an expeditious resolution. By the time plaintiffs locate the other 1993 applicants, there exists a high probability that this case will be over. Thus, the Court finds that numerosity has been satisfied in this case. Although the Court finds that twenty-two other 1993 applicants are sufficient to satisfy numerosity, the Court will address whether the 1996 applicants, futures and 1991 applicants qualify for class participation in order to properly define the class.

The Court finds that both the 1996 applicants and futures can be properly included in plaintiffs' proposed class. With respect to the 1996 applicants, SEPTA has not explicitly stated any reason as to why these women cannot participate in this class action. Instead, SEPTA merely lumps the 1996 applicants in with the futures and then argues that futures cannot be included in the numerosity requirement. This logic, however, is faulty. The 1996 applicants clearly are not future applicants—they have already applied and allegedly been harmed by SEPTA's discriminatory 12 minute, 1.5 mile run. Because SEPTA cannot set forth, and the Court cannot independently find a valid reason to exclude these 1996 applicants, the Court will count these 29 other women applicants toward the numerosity requirement, thus bolstering this Court's numerosity determination.

■ With respect to the futures, the Court finds that these future applicants can be properly considered for the purposes of determining numerosity. The number of women who will apply in the future and who will be denied the equal opportunity to become SEPTA police officers is "necessarily unidentifiable" and thus their joinder is "certainly impracticable." *Phillips v. Joint Legislative Comm.*, 637 F.2d 1014, 1022 (5th Cir.1981), *cert. denied*, 456 U.S. 971, 102 S.Ct. 2233, 72 L.Ed.2d 845 (1982) (citing *Jack v. American Linen Supply Co.*, 498 F.2d 122

(5th Cir.1974)). Although it is true that not all cases in which class standing is based, in part, on those who will be affected in the future will be deemed to meet the numerosity requirement, where the class is based on a common characteristic, here, gender, and where it does not strain credulity to recognize that there will be more than a minuscule number of future members, the joinder of future potential job applicants may be counted towards satisfaction of the numerosity requirement. *Piva v. Xerox, Corp.*, 70 F.R.D. 378, 391 (N.D.Cal.1975); *Scott v. Univ. of Del.*, 68 F.R.D. 606 (D.Del.1975). Thus, the Court will count the futures for the purposes of satisfying numerosity, thus supporting this Court's numerosity finding.

■ With respect to the 1991 applicants, however, this Court finds that they cannot be counted towards numerosity. As a general rule, a class may only include those members whose claims are not barred by the applicable statute of limitations. *See Mather v. Western Air Lines, Inc.*, 59 F.R.D. 535 (C.D.Cal.1973). In this case, both defendants and plaintiffs agree that the 1991 applicants did not file a § 1983 claim within the applicable statute of limitations and that the 1991 applicants did not file a charge of discrimination with the applicable agency within 300 days "after the alleged unlawful employment practice occurred."[13] 42 U.S.C.A. § 2000e–5(e). Under the general rule, these 1991 applicants would be time-barred, and thus precluded from any class action.

In an attempt to preserve the claims of these 1991 applicants, the plaintiffs argue that because of SEPTA's system-wide facially neutral running test which is a continuing practice, equitable tolling principles operate to include the 1991 rejected female applicants in this putative class. Specifically, the plaintiffs argue that the "discovery rule" and the "continuing violations" theory apply to save the 1991 applicants' § 706 claims from the bar of Title VII's time limitations.[14] For the

---

13. Since Pennsylvania is a deferral state, the time period for filing a charge under Title VII is 300 days.

14. It should be noted that plaintiffs do not specifically argue that the 1991 applicants' § 1983

claims, if any, are saved from the statute of limitations. To the extent that plaintiffs intended to assert this argument, the Court rejects it.

following reasons, the Court finds that the discovery rule and the continuing violations theory do not save the 1991 applicants' Title VII claims. Thus, they cannot be counted for numerosity purposes or included in the proposed class.

▉▉▉▉▉ The Court will first discuss plaintiffs' discovery rule argument. As a general rule, the statute of limitations begins to run when the plaintiff's cause of action accrues. *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1385 (3d Cir.1994). The accrual date is not the date on which the wrong that injures the plaintiff occurs, but the date on which the plaintiff discovers that he or she has been injured. *Id.* In some cases, there will be "occasions when an aggrieved person does not discover the occurrence of the alleged unlawful employment practice until some time after it occurred." *Id.* at 1386. Under this scenario, the discovery rule functions "to postpone the beginning of the statutory limitations period from the date when the alleged unlawful employment practice occurred, to the date when then plaintiff actually discovered he or she had been injured." *Id.* (citing *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450 (7th Cir.1990)). In these cases, the date that the aggrieved person realizes that they have been injured, and thus the date on which the cause of action accrues, is the date when the have awareness of the actual injury, "not upon awareness that this injury constitutes a legal wrong." *Id.* (citations omitted).

Applying the discovery rule here, plaintiffs contend that the 1991 female applicants should not be deprived of their right to redress because they could not have been aware of the harm to them until after the limitations period had run. Plaintiffs contend that SEPTA has its applicants run the 1.5 miles in different heats, which start at different times. In addition, SEPTA does not post the results. Indeed, plaintiffs allege that SEPTA merely informs the applicants that they may not proceed in the application process. Plaintiffs maintain that no overt

statements are made that SEPTA rejects the vast majority of female applicants. Based on these allegations, the plaintiffs submit that the discovery rule should be applied to save their claims because none of the 1991 applicants could have made out an adverse impact claim until sufficient information existed, and was reasonably accessible to them, that the test was discriminatory.

▉▉▉ Plaintiffs' argument, however, necessarily falls short because they cannot demonstrate that the information required by the 1991 applicants to make them aware of their injuries could not have been obtained through the exercise of reasonable diligence. "A claim accrues in a federal cause of action as soon as a potential claimant either is aware, or should be aware, of the existence of and source of an injury." *Id.* (citations omitted). Thus, it has been said that "the 'polestar' of the discovery rule is not the plaintiff's actual knowledge of injury, but rather whether the knowledge was known, or through the exercise of reasonable diligence, knowable to the plaintiff." *Id.* (citation omitted). In this case, the Court must reject plaintiffs' discovery rule argument because they simply have made no showing whatsoever that any one of the 1991 applicants exercised reasonable diligence in acquiring knowledge with respect to their alleged injury. Indeed, plaintiffs boldly admit that plaintiff Cathy Lanning learned of "the disparate impact of SEPTA's running test only upon her own initiative and investigation," *i.e.,* through the exercise of reasonable diligence. Because plaintiffs have not demonstrated that the 1991 applicants exercised reasonable diligence in becoming aware of any potential injury, the Court will not apply the discovery rule to save their claims.[15]

▉▉▉▉ Plaintiffs next argue that the claims of the 1991 applicants are saved by the continuing violations theory. "Under this theory, the [plaintiffs] may pursue a Title VII claim for discriminatory conduct that began prior to the filing period if [they] can demonstrate that the act is part of an

---

**15.** To the extent that plaintiffs argue that this Court should apply the doctrine of "equitable tolling" to save the 1991 applicants claims, the Court rejects this argument because the plaintiffs have not demonstrated that the 1991 applicants were actively misled by any statements or conduct by SEPTA. *Oshiver,* 38 F.3d at 1388.

ongoing practice or pattern of discrimination of the [defendants]." *West v. Philadelphia Electric Co.*, 45 F.3d 744, 754 (3d Cir.1995). In *Bronze Shields, Inc. v. New Jersey Dept. of Civ. Serv.*, 667 F.2d 1074, 1081 (3d Cir. 1981), the Third Circuit cited with approval a Senate Conference Committee report recognizing that "certain types of violations are continuing in nature," making it appropriate to "measure[ ] the running time of the required time period from the last occurrence of the discrimination and not from the first occurrence."

■ To establish that a claim falls within the continuing violations theory, the plaintiff must demonstrate that at least one act occurred within the filing period and that the discrimination is "more than the occurrence of isolated or sporadic acts of intentional discrimination." *Id.* (citing *Jewett v. International Tel. and Tel. Corp.*, 653 F.2d 89, 91 (3d Cir.1981)). "The relevant distinction is between the occurrence of isolated, intermittent acts of discrimination and a persistent, on-going pattern." *Id.*

Applying these principles to the facts of this case, the Court finds that the continuing violations theory does not apply here. To begin, the act of discrimination that plaintiffs claim the 1991 applicants were subjected to was the 1991 administration of the allegedly discriminatory physical fitness test. Plaintiffs do not allege that these 1991 applicants were discriminated against in any other way by SEPTA. Thus, the only act of discrimination that allegedly occurred against the 1991 applicants was the administration of the 1991 physical fitness test. Clearly, the administration of the 1991 test was a discrete act and does not demonstrate that SEPTA was engaged in a "persistent, on-going pattern" of discrimination with respect to the 1991 applicants. Thus, even if the Court finds that the physical fitness test is an ongoing discriminatory policy, the Court could not apply the continuing violations theory to save the 1991 applicants claims because the 1991 appli-

cants' rights were not violated by this policy on an ongoing basis. Indeed, the only time that the 1991 applicants' rights were allegedly violated was when they took the 1991 test. The continuing violations theory was simply not intended to cover cases where there is no continuing violation.[16]

Because the Court finds that the discovery rule and continuing violations theory do not save the 1991 applicants' claims from Title VII's time bar, the 1991 applicants cannot be counted for the purposes of numerosity and, as a matter of logical consistency, cannot be included in the class.

### 2. Commonality

■ The second requirement, "commonality," requires that the named plaintiffs and the proposed class share common questions of law or fact. The Third Circuit has stated that "[t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir.1994). And, in *School Asbestos Litigation*, 789 F.2d at 1010, the Third Circuit explained that "the 'threshold of commonality is not high.' " (citation omitted). "Because the requirement [of commonality] may be satisfied by a single common issue," the requirement is usually easily met in most cases. *See Baby Neal*, 43 F.3d at 56.

■ In this case, the commonality standard is easily satisfied. Plaintiffs claim that SEPTA requires transit police applicants to satisfy a physical performance running requirement that is not only allegedly unnecessary for performance of the position, but which adversely affects all women applicants. Every female applicant shares not only a common but identical legal issue—whether "SEPTA's physical fitness standards are job-related and consistent with business necessity .... and whether SEPTA has refused to adopt alternative selection devices with less

---

16. The result may have been different if the plaintiffs could have shown that the 1991 applicants continually applied for the position of SEPTA transit police officer but were continually denied a position because of the application of the ongoing, discriminatory policy. *See Roberts*

*v. North American Rockwell Corp.*, 650 F.2d 823 (6th Cir.1981) (court applied the continuing violations theory to toll the running of Title VII's time limitations where plaintiffs had continually applied for employment but were continually rejected due to an ongoing, discriminatory policy).

adverse impact that are equally job-related and consistent with business necessity." *Lanning v. SEPTA,* Civ. No. 97–0593, slip. op. at 4 (E.D.Pa. May 21, 1997). The legality of SEPTA's conduct is central to the claims of all the plaintiffs and prospective class members. Thus, the Court finds that the commonality requirement is satisfied.

### 3. Typicality

 The third requirement, "typicality", focuses upon whether the claims of the class representatives are "typical of the claims … of the class." The typicality requirement "is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees." *Baby Neal,* 43 F.3d at 57."Typicality entails an inquiry whether 'the named plaintiff's individual circumstances are markedly different or … the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'" *Id.* (quoting *Hassine v. Jeffes,* 846 F.2d 169, 176 (3rd Cir.1988)).

 "The inquiry assesses whether the named plaintiffs have incentives that align with those of absent class members so that the absentees' interests will be fairly represented." *Georgine v. Amchem Products, Inc.,* 83 F.3d 610, 631 (3d. Cir.1996) (citing *Baby Neal,* 43 F.3d at 57). A plaintiff's claims are considered typical where, in light of the facts and law applicable to the case, litigation of the named plaintiff's personal claims can reasonably be expected to advance the interests of absent class members. *Scott v. Univ. of Del.,* 601 F.2d 76, 84 (3d Cir.1979). Additionally, "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Grasty v. Amalgamated Clothing & Textile Workers Union,* 828 F.2d 123, 130 (3d Cir.1987); Herbert B. Newberg & Alba Conte, *1 Newberg on Class Actions* § 3.15 (3d ed.1992).

 In this case, the typicality requirement has been satisfied. The legal claims of the named plaintiffs and those of the proposed class members are identical, thus there is no opportunity that the legal claims of either group would potentially be placed into conflict. Further, the factual circumstances from which the claims of the named plaintiffs and proposed class members arose are strikingly similar. The claims of both groups arose from SEPTA's administration of an allegedly discriminatory physical fitness test, whereby all of the class members failed the running component of the test because of the adverse impact it has on women. And, even though some of the factual circumstances with respect to each individual class member are different, the claims of the class are not rendered atypical because the claims arise from the same course of conduct by the defendants. In sum, the Court finds that the named plaintiffs have incentives that align with those of absent class members so that the absentees' interests will be fairly represented.

### 4. Adequacy of Representation

 Finally, Rule 23(a)(4) requires that plaintiffs must "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The Third Circuit has consistently relied on two factors:

> (a) the plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed litigation; and (b) the Plaintiff must not have interests antagonistic to those of the class.

*Weiss v. York Hosp.,* 745 F.2d 786, 811 (3d Cir.1984) (quoting *Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 247 (3d Cir.1975)). Without a doubt, the Court finds that the attorneys representing plaintiffs are qualified, experienced and generally able to conduct the proposed litigation. Additionally, the Court finds that the named plaintiffs are adequate representatives of the class. The factual and procedural history of this case and the prior administrative proceedings support a finding that the named representatives have the ability and the incentive to vigorously represent the claims of the class.

Nothing in the record before this Court indicates that named plaintiffs have interests antagonistic to those of the class. Therefore, this fourth requirement has been satisfied.

Disposing of defendants' challenge to adequacy, the Court finds that plaintiffs have demonstrated that the threshold requisites of Rule 23(a)(1)–(4) have been satisfied. Clearing the Rule 23(a) hurdle, defendants must now demonstrate that its putative class satisfies Rule 23(b)(2).

### B. *Rule 23(b)(2)*

■ The *Lanning* plaintiffs seek certification under Rule 23(b)(2) which provides:

(b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

* * *

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed.R.Civ.P. 23(b)(2). Applying this section of Rule 23(b)(2) to the facts of this case, the Court finds that class certification under this section is appropriate.

In *Wetzel*, the Third Circuit stated that "a Title VII action is particularly fit for (b)(2) treatment, and the drafters of Rule 23 specifically contemplated that suits against discriminatory hiring and promotion policies would be appropriately maintained under (b)(2)." 580 F.2d at 250 (citations omitted). This logical finding is based on the reality that in Title VII cases the "conduct of the employer is actionable 'on grounds generally applicable to the class,' and the relief sought is 'relief with respect to the class as a whole.'" *Id.* Thus, in Title VII class actions, courts, almost without exception, have found that the action can be maintained under Rule 23(b)(2).

This case is no exception to the general rule. Plaintiffs are seeking relief for all women applicants to the SEPTA police force.

Plaintiffs allege that SEPTA's decision to institute, and continued insistence on maintaining, the challenged portion of the application process effectively excludes women from its police force. Plaintiffs are primarily seeking injunctive relief and declaratory relief with respect to the class as a whole. Perforce this case satisfies Rule 23(b)(2).

Defendants argue that the proposed class cannot be certified under (b)(2) because plaintiffs seek primarily monetary relief. The Court finds that defendants' position is completely contradicted by plaintiffs' prayer for relief. Indeed, an unbiased reading of plaintiffs' prayer for relief indicates that plaintiffs seek primarily injunctive relief. In addition, the Third Circuit opined that "a Title VII suit is essentially equitable in nature, it cannot be characterized as one seeking exclusively or predominantly money damages." *Id.* at 250–51 (citation omitted). Likewise, defendants cannot do so in this case.

Because the Court finds that plaintiffs have satisfied the threshold requirements of Rule 23(a)(1)–(4) and have demonstrated that the requirements of subsection (b)(2) have been met, this Court grants plaintiffs' motion for class certification. The Court, therefore, certifies the following 23(b)(2) class:

All 1993 female applicants, 1996 female applicants and future female applicants for employment as SEPTA police officers who have been or will be denied employment by reason of their inability to meet the physical entrance requirement of running 1.5 miles in 12 minutes or less.[17]

### IV. Conclusion

Accordingly, for the foregoing reasons, this Court grants in part and denies in part defendants' motion to dismiss. Defendants' motion is granted to the extent that it seeks dismissal of the named plaintiffs' § 1983 claims and to the extent it seeks dismissal of any claims asserted by the 1991 applicants; defendants' motion is denied in all other re-

---

17. The class that this Court has certified slightly modifies the class proposed by the *Lanning* plain-

tiffs to account for the Court's ruling that the 1991 applicants cannot qualify as class members.

spects. The Court also grants plaintiffs' motion for class certification.

An appropriate Order follows.

## ORDER

AND NOW, this 10th day of August, 1997, upon consideration of the following Motions, and any responses thereto, and replies thereto, and oral argument heard in open court at the class certification hearing held on May 19, 1997, and consistent with the foregoing Memorandum, it is hereby ORDERED as follows:

1. Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. Defendants' motion is granted to the extent it seeks dismissal of the named plaintiffs' § 1983 claims and to the extent that it seeks dismissal of any claims asserted by the 1991 applicants; defendants' motion is denied in all other respects.

IT IS FURTHER ORDERED that pursuant to the *Lanning* plaintiffs' request:

1) Plaintiffs' claim is narrowed to whether the 12 minute, 1.5 mile run violates Title VII and state law;

2) Plaintiffs' prayer for relief remains the same and if other portions of the hiring test are invalidated, plaintiffs and class members are entitled to the benefit of such a ruling in the determination of damages and relief; and

3) to the extent that this Court deems it relevant evidence to the challenge of the 1.5 mile run test, plaintiffs are entitled to present evidence and examine witnesses regarding the other components of the physical fitness test.

2. Plaintiffs' Motion for Class Certification is GRANTED. IT IS FURTHER ORDERED that the following class is CERTIFIED pursuant to Federal Rule of Civil Procedure 23(b)(2):

All 1993 female applicants, 1996 female applicants and future female applicants for employment as SEPTA police officers who have been or will be denied employment by reason of their inability to meet the physi-

cal entrance requirement of running 1.5 miles in 12 minutes or less.

AND IT IS SO ORDERED.