Ian HAWKER, Nelson Miles, and Jermaine Lawrence, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Andrew CONSOVOY, William T. McCargo, Loraine Kulick, Peter W. Loos, Dominic Porrovecchio, Rolando Gomez Rivera, Rachel Torres–Chowaniec, and Ruby J. Washington, Defendants.

Civ.A. No. 00–2106(JAP).

United States District Court, D. New Jersey.

Jan. 22, 2001.

Philip Stephen Fuoco, Joseph A. Osefchen, The Law Firm of Philip Stephen Fuoco, Haddonfield, NJ, for Plaintiffs.

John J. Farmer, Jr., Attorney General of New Jersey, Dianne M. Moratti, James D. Harris, Deputy Attorneys General, Trenton, NJ, for Defendants.

## OPINION

PISANO, District Judge.

## I. BACKGROUND

On May 2, 2000, Ian Hawker, Nelson Miles, and Jermaine Lawrence ("Named Plaintiffs"), three inmates incarcerated at Riverfront State Prison in Camden, New Jersey, filed a class action complaint pursuant to 42 U.S.C. § 1983 against Andrew Consovoy, William T. McCargo, Loraine Kulick, Peter W. Loos, Dominic Porrovecchio, Rolando Gomez Rivera, Rachel Torres–Chowaniec, and Ruby J. Washington ("Defendants"), the members of the New Jersey State Parole Board ("Parole Board").[1] (Compl. at ¶¶ 10–22). The complaint alleges that the Parole Board knowingly and consistently failed to meet the deadlines for the preparation of pre-parole reports and the conduction of parole hearings, as required by the New Jersey

---

1. Because the complaint seeks, *inter alia,* injunctive relief against the Defendants in their official capacity (Compl. at ¶¶ 15–22), the fact that the composition of the Parole Board has changed since May 2000 is inconsequential because any successor to a named defendant is automatically substituted as a party. *See* Fed.R.Civ.P. 25(d)(1).

Parole Act of 1979 ("Act"), N.J.S.A. 30:4–123.45 to 30:4–123.69, in violation of the due process clause of the fourteenth amendment to the United States Constitution.[2] (Compl. at ¶¶ 7, 23–24, 46–47, 74–75). As a result of the Parole Board's alleged ongoing inaction, the Named Plaintiffs and thousands of potential class members have remained incarcerated past their respective parole eligibility dates. (Compl. at ¶¶ 45–48). The complaint demands declaratory and injunctive relief, and a class-wide award of nominal damages.[3] (Compl. at ¶¶ 24, 82). The Court has subject-matter jurisdiction over the case pursuant to 28 U.S.C. §§ 1331 and 1343.

Immediately following the filing of the complaint, the parties began to hold settlement negotiations. During that period, the Defendants' time to file an answer was extended, and the Court conducted several status conferences to monitor the parties' progress. While settlement talks were occurring, the Court received many letters from potential class members commenting on various aspects of the case, and informing the Court of their inability to obtain redress from the Parole Board. As a result, the Court ordered the Clerk of the District Court to establish a document depository in which these correspondence would be maintained for review by interested parties.

As of September 2000, a settlement still had not been reached, and the Named Plaintiffs filed a motion to certify the class pursuant to Federal Rule of Civil Procedure ("Rule") 23. The following month, they filed a motion for a preliminary injunction pursuant to Rule 65 for an order compelling the Parole Board to eliminate the parole hearing backlog, to ensure future compliance with the Act, and to appoint a special master to monitor the Parole Board's activity. The Defendants opposed the Named Plaintiffs' motions, and moved for summary judgment pursuant to Rule 56, or, in the alternative, to dismiss pursuant to Rule 12(b)(6).

In November 2000, before the Court addressed the merits of the pending motions, the parties informed the Court that they had executed a Settlement Agreement.[4] The Court subsequently granted the parties' request for class certification for the purpose of settlement only, and approved the methods for notifying the potential class members of the terms of the settlement. Notice of the proposed settlement was ordered to be published in the *Philadelphia Inquirer* and the *Newark Star Ledger*, and posted in all prisons and jails in which potential class members were incarcerated.[5] The Court subsequently dismissed without prejudice the Named Plaintiffs' motion for a preliminary injunction, and the Defendants' dispositive motion.

The parties' execution of the Settlement Agreement, which resolves all claims, triggered the Court's duty to confirm that the class certification requirements of Rule 23

**2.** During the pendency of this action, the three Named Plaintiffs received parole hearings, and were denied parole. (Aff. of Kenneth Connolly at ¶¶ 3–5). Consequently, their individual claims became no longer viable. However, despite the Named Plaintiffs' loss of a personal stake in the litigation, the Court finds that the action is not moot because their claims are "capable of repetition, yet evading review." *See United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 398, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) ("When the claim on the merits is 'capable of repetition, yet evading review,' the named plaintiff may litigate the class certification issue despite loss of his personal stake in the outcome of the litigation.").

**3.** The complaint does not seek compensatory damages, and the release of any inmate by writ of habeas corpus is specifically disavowed. (Compl. at ¶¶ 8, 24).

**4.** The Settlement Agreement was signed by class counsel on November 10, 2000, and by defense counsel on November 13, 2000. Thus, the Court considers the Settlement Agreement executed on November 13, 2000.

**5.** At the fairness hearing, Elaine G. Selan, a co-founder of And Justice For All, a prisoner advocacy organization, claimed that the Settlement Agreement had not been adequately posted in Riverfront State Prison and New Jersey State Prison. The Court rejects Ms. Selan's bare assertions in light of the fact that numerous objections to the Settlement Agreement were submitted from inmates incarcerated in both of those facilities. (Defs.' App. in Supp. of the Settlement Agreement at Ex. 1). The Court concludes that publication and posting of the notice were sufficient to inform potential class members of the proposed settlement, and to provide them an opportunity to comment. *See In re Prudential Ins. Co. of America Sales Practices Litig.*, 148 F.3d 283, 306 (3rd Cir.1998), *cert. denied*, 525 U.S. 1114, 119 S.Ct. 890, 142 L.Ed.2d 789 (1999) (*"In re Prudential Ins. Co."*).

have been met, and to determine whether the settlement is fair and reasonable. Pursuant to that obligation, the Court conducted a fairness hearing on January 16, 2001. For the reasons set forth below and on the record following the fairness hearing, the Court finds that the requirements of Rule 23 have been satisfied, and that the Settlement Agreement should be approved.

## II. REQUIREMENTS OF THE ACT

The Act establishes a comprehensive scheme for the administration of parole determinations for eligible inmates. The parole determination process entails the completion of various tasks, each having a deadline which is calculated with reference to the inmate's parole eligibility date.[6] The Act creates a presumption in favor of granting parole on the date of eligibility, unless the Parole Board can prove that the inmate should not be released. N.J.S.A. 30:4–123.53a; see also New Jersey Parole Bd. v. Byrne, 93 N.J. 192, 206, 460 A.2d 103 (1983).

The first step in the process is the preparation of an eligible inmate's pre-parole report by employees of the facility in which the inmate is incarcerated. N.J.S.A. 30:4–123.54a. The report must be filed with the parole board panel "[a]t least 120 days but not more than 180 days prior to the parole eligibility date." Ibid. A pre-parole report details the inmate's pre-incarceration records, behavior during the period of confinement, proposed parole plan, and likelihood of committing crimes if released. N.J.S.A. 30:4–123.54b(1). When the pre-parole report is filed with the parole board panel, the inmate also receives a copy. N.J.S.A. 30:4–123.54c. At that time, the inmate has the opportunity to submit "a written statement regarding the report, but shall do so within 105 days prior to the primary parole eligibility date." Ibid.

The Act next mandates that "a designated hearing officer shall review the reports ... and shall determine whether there is a basis for denial of parole in the preparole report...." N.J.S.A. 30:4–123.55a. If the hearing officer finds no basis to deny parole and no need for a hearing, the officer is required to submit to the applicable parole hearing panel, "at least 60 days prior to the inmate's parole eligibility date," a written recommendation in favor of granting parole. Ibid. If the assigned parole panel member concurs with the hearing officer's recommendation, the panel member will certify the inmate's release "as soon as practicable after the eligibility date and so notify the inmate and the [parole] board." N.J.S.A. 30:4–123.55b. But if the hearing officer or the panel member determines that parole should be denied, or that a parole hearing is necessary, the parole board and the inmate are notified, and a hearing is conducted "at least 30 days prior to the eligibility date." N.J.S.A. 30:4–123.55c. "At the hearing, which shall be informal, the board panel shall receive as evidence any relevant and reliable documents or in person testimony...." Ibid. An inmate has the right to present and to rebut evidence at the hearing. Ibid.

After the hearing, the parole panel may order that parole be granted or denied. N.J.S.A. 30:4–123.55d. If parole is denied, the panel must file with the parole board "within 30 days of the hearing a statement setting forth the decision." Ibid. An inmate who is denied parole is given a future parole eligibility date based on relevant considerations, such as the severity of the crime and the inmate's record. N.J.S.A. 30:4–123.56a. As the future parole eligibility date nears, the Parole Board must repeat the parole determination process to decide whether to release an inmate who was previously denied parole. N.J.S.A. 30:4–123.56c.

## III. OVERVIEW OF THE SETTLEMENT AGREEMENT

The Settlement Agreement divides all parole eligible inmates into categories based on when they became or will become parole eligible, and when the Parole Board had the capacity to know or will have the capacity to know of their parole eligibility date. A past eligible inmate is an inmate eligible for parole who has not received a parole hearing before his parole eligibility date. (Settle-

---

6. Although the Act generally imposes deadlines, these deadlines "may be waived by the appropriate board panel for good cause" if so requested by the hearing officer or the inmate. N.J.S.A. 30:4–123.55e.

ment Agreement at 3). The category of past eligible inmates is divided into current past eligible inmates and future past eligible inmates. A current past eligible inmate is one who, prior to approval of the Settlement Agreement, is incarcerated and overdue for a parole hearing. A future past eligible inmate is one who will become a past eligible inmate after the date that the Settlement Agreement is approved.

Structural past eligible inmates are a subset of past eligible inmates, and are defined as those inmates "who become past eligible or will become past eligible in a manner beyond the control of the Parole Board which did not afford the full 120 days provided by N.J.S.A. 30:4–123.54a to prepare for the initial and panel parole hearings." (*Ibid.*). In other words, an inmate becomes structural past eligible when the Parole Board cannot determine an inmate's parole eligibility date sufficiently in advance of the date to comply with the first requirement of the Act, namely, the preparation of a pre-parole report no later than 120 days before the parole eligibility date.

An inmate can become structural past eligible in a number of ways, including, but not limited to, the following: (1) having received enough prior custody credits before sentencing; (2) being resentenced to a lesser term of incarceration; (3) being resentenced to concurrent terms of imprisonment rather than consecutive terms; (4) having a longer sentence vacated; (5) having prison credits restored after they had been forfeited; and (6) having reconsidered a prior decision not to cooperate with the parole process. (Settlement Agreement at 3–5).

Under the terms of the Settlement Agreement, current past eligible inmates will receive a parole panel hearing within ten weeks after November 13, 2000, the date on which the Settlement Agreement was executed. (Settlement Agreement at 9). If more past eligible inmates are discovered after that date, those inmates will receive a parole panel hearing before the expiration of the ten-week period beginning on November 13, 2000, or within 60 days after discovery of their past eligible status, whichever period is longer. (*Ibid.*).

Inmates who become eligible for parole on or after the date that the Court approves the Settlement Agreement, but before two years following the approval date, will receive a parole panel hearing no later than their parole eligibility date. (Settlement Agreement at 10). Inmates who become eligible for parole more than two years, but less than four years, after the approval date, will receive a parole panel hearing no later than 30 days before the parole eligibility date, as required by N.J.S.A. 30:4–123.55c.[7] (*Ibid.*). Any individual who becomes a structural past eligible inmate after the approval date will, within 120 days, either have a parole panel hearing or be given a written explanation why a parole hearing could not be provided. (Settlement Agreement at 11).

The Settlement Agreement also establishes an administrative appeal process by which current past eligible inmates, future past eligible inmates, and structural past eligible inmates who claim not to have received a parole hearing in the manner specified by the Settlement Agreement can file an appeal to the Parole Board. (Settlement Agreement at 12). Appeal forms will be available to all inmates, and the Parole Board will be required to respond to an appeal filed by current past eligible inmates and future structural past eligible inmates within 30 days either by providing a parole panel hearing or a written explanation for its failure to do so. (Settlement Agreement at 12–13). With respect to appeals filed by future past eligible inmates, the Parole Board will have 45 days to respond. (Settlement Agreement at 14).

A denial of an appeal by the Parole Board will constitute a final agency decision within the meaning of New Jersey Court Rule 2:2–3(a)(2), thereby permitting an appeal as of right to the New Jersey Superior Court, Appellate Division. (Settlement Agreement

---

7. Pursuant to this term of the Settlement Agreement, the Parole Board is required to conform its conduct to the deadlines imposed by the Act no later than two years after the approval date. (Settlement Agreement at 23). The Settlement Agreement will terminate eighteen months after the Parole Board certifies that it is in compliance with all provisions of the agreement, but no later than four years after the approval date. (Settlement Agreement at 20–21).

at 13). The Parole Board's failure to respond timely to an appeal will be automatically deemed a final agency decision denying the appeal. (*Ibid.*). For every day after the applicable deadline that the Parole Board does not respond to an administrative appeal, it must pay a sanction in the amount of $17.50 to the American Friends Service Committee, Prisoners Resource Center ("AFSC").[8] (*Ibid.*).

The Settlement Agreement also requires the Parole Board to submit to the Office of Administrative Law proposed amendments to N.J.A.C. 10A:71–4.2 and 10A:71–4.3, which will recognize the new appeal process. (Settlement Agreement at 16–17). In addition, there will be a proposed amendment to N.J.A.C. 10A:71–3.18(a)(3)(I), which will provide that a parole board panel can only defer a parole determination "90 days past the inmate's parole eligibility date" when the panel is awaiting a psychological evaluation with respect to parole eligibility. (*Ibid.*).

Periodic reports detailing the progress of the Parole Board will be submitted to class counsel, and rosters listing all future past eligible inmates and future structural past eligible inmates will be posted monthly in every facility operated by the New Jersey Department of Corrections. (Settlement Agreement at 18–19). The Settlement Agreement also provides that the Parole Board will pay class counsel attorneys' fees and costs in the amount of $110,000.[9] (Settlement Agreement at 23). Finally, in the event that class counsel must seek to enforce any provision of the Settlement Agreement, class counsel is entitled to attorneys' fees and costs in the amount of $200.00 per hour. (Settlement Agreement at 23–24).

## IV. CLASS CERTIFICATION IS WARRANTED

■ A putative class representative seeking class certification must satisfy the four requirements of Rule 23(a), and must also demonstrate that the action is maintainable under one of the three categories set forth in Rule 23(b). *Barnes v. American Tobacco Co.*, 161 F.3d 127, 140 (3rd Cir.1998) (citation omitted), *cert. denied*, 526 U.S. 1114, 119 S.Ct. 1760, 143 L.Ed.2d 791 (1999). Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

[Fed.R.Civ.P. 23(a).]

A court must undertake a "rigorous analysis" to determine whether the putative class and its proposed representatives satisfy each of the prerequisites to class certification. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

■ In considering whether class certification is appropriate, a court must refrain from conducting a preliminary inquiry into the merits of the action. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). However, it may be necessary for the court "to analyze the elements of the parties' substantive claims and review facts revealed in discovery in order to evaluate whether the requirements of Rule 23 have been satisfied." *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 353 (D.N.J.1997).

### A. RULE 23(a) REQUIREMENTS

#### 1. Numerosity

■ The first requirement under Rule 23(a) is satisfied when "the class is so numer-

---

8. At the fairness hearing, class counsel and defense counsel stated that they selected AFSC as the recipient of any sanctions based on their prior knowledge and dealings with the organization. Counsel expressed their confidence in this organization's ability to ensure that any money received would be expended prudently. At least one inmate has questioned how the AFSC would use the funds. Based on counsel's representations, the Court is satisfied that AFSC is a legitimate organization, and will utilize any money on behalf of inmates.

9. Following the fairness hearing on January 16, 2001, the Court determined that the award of attorneys' fees and costs to class counsel was fair and reasonable. The Court relies on its oral findings with respect to this issue.

ous that joinder of all members is impracticable . . . ." Fed.R.Civ.P. 23(a)(1). To meet the impracticability requirement, joinder of every class member need not be impossible; instead, "difficulty or inconvenience of joining all members of the class" will suffice. *Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397, 406 (D.N.J.1990) (quoting *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir.1964) (citation omitted)).

■ "No magic number exists satisfying the numerosity requirement." *Moskowitz v. Lopp*, 128 F.R.D. 624, 628 (E.D.Pa.1989); *see, e.g., Manning v. Princeton Consumer Discount Co.*, 390 F.Supp. 320, 324 (E.D.Pa. 1975) (finding fourteen class members enough to satisfy the numerosity requirement), *aff'd*, 533 F.2d 102 (3rd Cir.), *cert. denied*, 429 U.S. 865, 97 S.Ct. 173, 50 L.Ed.2d 144 (1976); *Minersville Coal Co. v. Anthracite Export Ass'n*, 55 F.R.D. 426, 428 (M.D.Pa.1971) (finding three-hundred thirty class members not so numerous to render their joinder impracticable). The exact number of potential class members need not be ascertained; rather, an estimate of class size is sufficient. *Zinberg*, 138 F.R.D. at 405 (citation omitted).

■ The joinder of potential future class members who share a common characteristic, but whose identity cannot be determined yet is considered impracticable. *Lanning v. Southeastern Pennsylvania Transp. Auth.*, 176 F.R.D. 132, 148 (E.D.Pa.1997). In addition, the numerosity standard is subject to relaxation when the potential class is primarily seeking injunctive relief. *Weiss v. York Hosp.*, 745 F.2d 786, 808 (3rd Cir.1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985).

■ During the course of this litigation, the claimed number of inmates overdue for a parole hearing has varied from several hundred to several thousand inmates, depending on the source of the statistics. (Compl. at ¶¶ 55, 59). As of November 14, 2000, the New Jersey Office of the Attorney General revealed that there were approximately 4,000 inmates overdue for a parole hearing, and more than 14,000 current inmates who will reach their parole eligibility date within eigh-

teen months, making them potential future class members. (Pls.' Mem. in Supp. of the Settlement Agreement at 19). Thus, as of mid-November 2000, there were at least 18,-000 potential class members. *Ibid.*

At the fairness hearing, defense counsel admitted that the number of past eligible inmates had been as high as 5,800 inmates, although the backlog had been eliminated shortly before the fairness hearing was held. Although there may be less than 18,000 potential class members currently, many thousands of potential class members still exist. Consequently, the Court finds that the joinder of this many potential class members is not feasible. In addition, the Court also finds that relaxation of the numerosity standard is warranted because injunctive and declaratory relief are the chief foci of the complaint. Therefore, the Court finds that the numerosity requirement of Rule 23(a)(1) has been met.

### 2. *Commonality*

■ The second requirement under Rule 23(a) is met when "there are questions of law or fact common to the class . . . ." Fed. R.Civ.P. 23(a)(2). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3rd Cir.1994) (citations omitted). "[I]njunctive actions 'by their very nature often present common questions satisfying Rule 23(a)(2).'" *Id.* at 57 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1763, at 201 (1986)).

The Court finds that the following common questions exist in the present case: (1) whether the Prison Litigation Reform Act of 1996 ("PLRA") precludes inmates who have not exhausted administrative remedies from maintaining an action challenging the Parole Board's non-compliance with the Act;[10] (2) whether the Parole Board's failure to comply with the requirements imposed by the Act violates the due process rights of the potential class members; and (3) whether the potential class is entitled to declaratory and

---

**10.** *See* discussion *infra* Part V.A.4.

injunctive relief requiring the Parole Board to provide pre-parole reports and to conduct parole hearings in a timely manner. These issues, which are common to all potential class members, are sufficient to meet the commonality requirement of Rule 23(a)(2).

### 3. *Typicality*

■ The third requirement of Rule 23(a) is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class...." Fed. R.Civ.P. 23(a)(3). This concept of typicality "is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Baby Neal,* 43 F.3d at 57 (citations omitted). Actions which seek injunctive and declaratory relief on behalf of representative plaintiffs and potential class members "usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." *Id.* at 58 (citation omitted).

As previously stated, the Named Plaintiffs primarily seek injunctive and declaratory relief based on the legal theory that the Parole Board's general policy or practice of failing to comply with the deadlines imposed by the Act amounts to a due process violation. At most, there are minor factual differences among the individual claims of the Named Plaintiffs and the potential class members. For example, the amount of time that individual inmates are overdue for a parole hearing varies, as may the underlying reason for the delay. Such factual distinctions do not preclude the Court from finding that the claims of the Named Plaintiffs are typical of the potential class members' claims. Therefore, the typicality requirement of Rule 23(a)(3) has been met.

### 4. *Adequacy of Representation*

■ The fourth requirement of Rule 23(a) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The following two-prong test determines whether the representation has been adequate: "(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 247 (3rd Cir.) (citation omitted), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *see also In re Data Access Systems Securities Litig.,* 103 F.R.D. 130, 140 (D.N.J.1984).

■ With more than twenty-five years of experience handling class actions in federal and state courts, class counsel is competent and certainly qualified to represent the class, and, thus, the first prong of the adequacy of representation test is satisfied. (Pls.' Mem. in Supp. of the Mot. for Class Certification at 15). With respect to the second prong, the Court finds that the Named Plaintiffs' interests do not diverge from those of the potential class members since all inmates are seeking the same injunctive and declaratory relief. Because there is no demand for compensatory damages, every potential class member will benefit equally from equitable relief. Therefore, the Court finds that the fourth requirement of Rule 23(a) has been satisfied.

### B. *RULE 23(b)(2) REQUIREMENTS*

■ A class action may be maintained under Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R.Civ.P. 23(b)(2). This rule was "designed specifically for civil rights cases seeking broad declaratory or injunctive relief for a numerous and often unascertainable or amorphous class of persons." *Baby Neal,* 43 F.3d at 59 (quoting 1 H. Newberg & A. Conte, *Newberg on Class Actions* § 4–11, at 4–39 (1992)). Rule 23(b)(2) "is almost automatically satisfied in actions primarily seeking injunctive relief." *Id.* at 58 (citing *Weiss,* 745 F.2d at 811); *see also Austin v. Hopper,* 15 F.Supp.2d 1210, 1229 (M.D.Ala.1998) (stating that "class certification under Rule 23(b)(2) is particularly appropriate in the prison litigation context where only injunctive and declaratory relief are sought"). It should also be noted that in a Rule 23(b)(2) class action,

"unnamed members are bound by the action without the opportunity to opt out."[11] *Barnes,* 161 F.3d at 142–43.

The Named Plaintiffs are seeking injunctive and declaratory relief in this civil rights case where the Parole Board's alleged past general policy of inaction resulted in potential class members not having received preparole reports and parole hearings in a timely manner. The claims set forth in the complaint fit squarely within the framework of Rule 23(b)(2). Therefore, because the Court has determined that the requirements of Rule 23(a) and 23(b)(2) have been satisfied, the Court will certify the following proposed class of plaintiffs:

> All State inmates as of the date of the filing of this suit confined within the facilities of the New Jersey Department of Corrections or county jails who have not received a parole panel hearing referenced in N.J.S.A. 30:4–123.55c or have not been certified for release pursuant to N.J.S.A. 30:4–123.55b by their parole eligibility date as set by the Parole Board and all inmates in the future who are so confined and have not received the above cited hearing or release certification.

## V. *APPROVAL OF THE SETTLEMENT AGREEMENT*

"The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 784 (3rd Cir.) (citations omitted), *cert. denied,* 516 U.S. 824, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995) ("*In re G.M. Corp.*"). After the parties reach a class action settlement, the court should approve the settlement if it is "fair, reasonable and adequate." *Id.* at 785. This obligation is derived from Rule 23(e) which provides: "A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." Fed.R.Civ.P. 23(e).

In deciding whether to approve a settlement, the court must carefully balance two competing principles: "On the one hand, the court must scrupulously ensure that the proposed settlement is in the best interests of class members by reference to the best possible outcome. On the other hand, the court must not hold counsel to an impossible standard, as settlement is virtually always a compromise...." *In re Ikon Office Solutions, Inc.,* 194 F.R.D. 166, 179 (E.D.Pa. 2000). The Third Circuit has noted that cases "where the parties simultaneously seek certification and settlement approval, require 'courts to be even more scrupulous than usual' when they examine the fairness of the proposed settlement." *In re Prudential Ins. Co.,* 148 F.3d at 317 (quoting *In re G.M. Corp.,* 55 F.3d at 805). In determining whether a proposed class action settlement is fair and reasonable, a court is guided by the following non-exhaustive list of factors:

(1) the complexity, expense and likely duration of the litigation ...; (2) the reaction of the class to the settlement ...; (3) the stage of the proceedings and the amount of discovery completed ...; (4) the risks of establishing liability ...; (5) the risks of establishing damages ...; (6) the risks of maintaining the class action through the trial ...; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery ...; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation....

[*Girsh v. Jepson,* 521 F.2d 153, 157 (3rd Cir.1975) (quoting *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2nd Cir.1974)).]

### A. *APPLICATION OF THE GIRSH FACTORS*

#### 1. *Continued Litigation Will Require Additional Time and Expense*

According to class counsel, "[a] parole hearing now is worth more to an inmate than the same parole hearing next year."

---

11. A few class members have sought to be excluded from the class. Because there is no right to opt-out under Rule 23(b)(2), the Court denies their requests.

(Pls.' Mem. in Supp. of the Settlement Agreement at 17). By settling the case, class members avoid having to wait any longer for equitable relief. Until recently, many inmates had been waiting more than one year beyond their parole eligibility date for a parole hearing, and some inmates had waited even longer. Although the backlog of past eligible inmates has been eliminated, a rejection of the Settlement Agreement could result in another parole hearing backlog. Under the terms of the Settlement Agreement, inmates would no longer face long-overdue parole hearings, but further litigation could result in a relapse. Therefore, in this class action, where injunctive and declaratory relief are the primary goals, additional delay diminishes the value of equitable relief to the class. If the Settlement Agreement is not approved, thereby requiring the class to prosecute successfully its claims, the Parole Board's eventual compliance with the Act will be jeopardized.

Additional litigation would necessarily involve not only additional delay in obtaining relief, but also additional expense. To date, class counsel has financed the litigation on behalf of the inmates, and the public is ultimately responsible for the defense of the case and other costs. Due to the time, expense, and use of judicial resources involved in further litigation, settlement is preferable for all parties.

### 2. Although Class Members, Including the Named Plaintiffs, Have Objected to the Settlement Agreement, Their Claims Are Not Persuasive

Since being notified of the pending settlement, a number of class members, including the Named Plaintiffs, have filed objections based on various grounds. Roughly two-hundred fifty inmates filed objections to the Settlement Agreement, although some of the objections are more accurately deemed criticism of the Parole Board.[12] By letter dated December 9, 2000, the Named Plaintiffs claimed that class counsel had "not acted in the best interests of the Class." At the fairness hearing, they reiterated their objections to class counsel's representation and noted their dissatisfaction with the negotiated terms of the Settlement Agreement. The objections of the Named Plaintiffs were similar to those raised by other inmates and the Court addresses them below.[13]

After having carefully reviewed the objections, the Court would aptly characterize them, in their totality, as expressing a general discontentment with the terms of the Settlement Agreement. Many objections are the result of a fundamental misunderstanding of the underlying purpose of the class action, a lack of knowledge of the legal ramifications to class members of a court-approved settlement, and unrealistic or overly optimistic expectations. The objections fail to convince the Court that the Settlement Agreement is unfair or unreasonable.

#### i. Objection—The Settlement Agreement Does Not Provide for Neutral Oversight of the Parole Board

The most common objection asserted by class members is that there will be no oversight by a neutral party to ensure the Parole Board's compliance with the Settlement Agreement. Some inmates suggest that the Court appoint a special master. 18. U.S.C. § 3626(f)(1)(A) provides that a special master may be appointed "[i]n any civil action in a Federal court with respect to prison conditions...." However, a district court may

---

**12.** The following are examples of objections from inmates that did not relate to the fairness and adequacy of the Settlement Agreement itself: (1) the Parole Board and various other governmental entities have engaged in conspiracies and other criminal activity; (2) inmates are frequently unsuccessful when filing administrative appeals; (3) inmates should be summarily paroled or released if there are parole hearing delays; (4) the Parole Board has too much power and not enough accountability; (5) the Parole Board has submitted to the Court inaccurate and manipulated statistics; and (6) parole panels predetermine cases before the inmate receives a parole hearing. The Court does not regard such comments as proper objections to the Settlement Agreement, and, consequently, will not address them.

**13.** The objections of the Named Plaintiffs are not entitled to additional weight because of their status as representative parties. *See Walsh v. Great Atlantic & Pacific Tea Co.,* 726 F.2d 956, (3rd Cir.1983) ("Class counsel's duty to the class frequently diverges from the opinion of either the named plaintiff or other objectors.") (citations omitted).

appoint a special master "only upon a finding that the remedial phase will be sufficiently complex to warrant the appointment." 18 U.S.C. § 3626(f)(1)(B). Whether the Settlement Agreement satisfies the "sufficiently complex" standard is an issue that the Court need not confront because the appointment of a special master is not warranted in light of the adequate protections offered by the Settlement Agreement.

The Settlement Agreement contains a number of mechanisms to ensure the Parole Board's compliance. First, the Settlement Agreement provides deadlines which the Parole Board must meet, and the Parole Board has expressed its intention to meet those deadlines. (Aff. of Mario Paparozzi at ¶¶ 19–20). In the event that the Parole Board fails to meet a deadline, an inmate will have the right to file an administrative appeal, and the Parole Board will be required to respond to an appeal timely or sanctions will automatically accrue. (Settlement Agreement at 12–16).

The Parole Board also faces the prospect that class counsel will sue to enforce the Settlement Agreement. Paragraph 2 of Section XIV of the Settlement Agreement provides in relevant part: "Plaintiffs shall be entitled to attorneys' fees and costs for legal representation which is necessary to the successful enforcement of the Settlement Agreement and shall apply to the Court for determination of the amount of such fees and costs. Any application for such attorneys' fees and costs shall be at a rate of $200.00 per hour." (Settlement Agreement at 23–24). While some inmates have expressed a lack of confidence in class counsel's representation, the Court finds these concerns unfounded. Based on class counsel's competent representation to date, the Court finds that class counsel would not hesitate to invoke that enforcement right if necessary.

Because the Settlement Agreement grants class members an administrative remedy, and class counsel an enforcement right, the Court finds that these terms sufficiently protect the interests of class members. Thus,

the appointment of a special master, even if permitted, is not warranted.

### ii. Objection—The Parole Board Does Not Admit Liability

Many inmates strongly object to the Settlement Agreement because it does not include an admission of liability from the Parole Board. A related objection raised by class members is that the Parole Board is not taking full responsibility for the backlog. The Court finds that these objections do not render the settlement unfair or unreasonable. Section VIII of the Settlement Agreement states in relevant part: "The parties expressly acknowledge and agree that this Settlement Agreement does not constitute an admission of liability by Defendants or the Parole Board. Defendants have denied liability and expressly continue to deny liability despite their willingness to enter into this Settlement Agreement." (Settlement Agreement at 21).

Often when parties settle a case, the defendant does not admit liability. Because the Parole Board refuses to admit liability, liability could only be established if the class successfully prosecuted the action and a judgment was entered against the Defendants. Doing so would involve additional litigation and entail significant cost and delay, as previously noted, as well as substantial risk. Based on these considerations, the Court finds that the absence of an admission of liability by the Defendants does not render the Settlement Agreement unfair or unreasonable.[14]

### iii. Objection—A Two Year Time Frame for Parole Board Compliance with the Act Is Too Long

Another objection lodged by some class members is that the Parole Board should be required to come into full compliance with the Act in less than two years, if not immediately. This objection does not persuade the Court that the Settlement Agreement is un-

---

14. Although the Settlement Agreement contains no admission of liability, the class members should take solace in the fact that defense counsel conceded at the fairness hearing that the Parole Board's past conduct was "unaccepta-

ble." Although there has not been an acceptance of responsibility in a legal sense, the Parole Board, from the outset, has acted responsibly by working to remedy the parole hearing backlog and to ensure that it does not recur.

fair or unreasonable. As the Court previously explained, the alternative to settlement is additional litigation, which would cause a significant amount of delay given the procedural status of the case when the Settlement Agreement was executed. There has been no formal discovery in this action, and the Defendants did not file an answer. If further litigation were pursued, the Parole Board might not unilaterally decide to conform its conduct to the Act unless and until the class obtained a judgment, which could take several years to accomplish.

Although the Parole Board is given two years to comply with all deadlines imposed by the Act, during the two year grace period, the parole hearing backlog will be eliminated and the Parole Board's conduct will nearly be in compliance with the Act.[15] Under the Settlement Agreement, inmates who become eligible for parole after the approval date, but before two years after the approval, will be given parole hearings no later than their parole eligibility date. N.J.S.A. 30:4–123.55c mandates that parole eligible inmates receive a parole hearing no later than 30 days before the parole eligibility date. Therefore, the Parole Board only has an additional 30 days to conduct a parole hearing during the two year period following approval of the Settlement Agreement. The Court does not regard this term as unfair or unreasonable.

#### iv. *Objection—There Is No Provision for Compensatory Damages*

Another common objection is that the Settlement Agreement fails to provide class members with compensatory damages. A related objection is that any sanctions that the Parole Board must pay for failing to respond timely to an administrative appeal should be paid to the class members, not the AFSC. The Court rejects these objections because the complaint did not seek compensatory damages.[16] With respect to sanctions payable to AFSC, those payments are not intended to function as compensatory damages, but rather, are designed to ensure timely compliance with the newly created administrative appeal process. Thus, the absence of an award of monetary damages is neither unfair nor unreasonable.

#### v. *Objection—The New Appeal Process Creates Another Hurdle for Inmates to Overcome*

Some class members object to the Settlement Agreement on the ground that the new administrative appeal process simply creates another layer of bureaucracy to the detriment of inmates. The Court disagrees with their assessment because the appeal process and the possibility of sanctions provide a strong incentive for the Parole Board to address an inmate's concerns in a timely manner. These two mechanisms prevent the complaints of class members from languish-

---

**15.** Some inmates claim that Parole Board vacancies are responsible for the prior delays and will continue to affect the Parole Board's ability to comply timely with the Settlement Agreement. Because the Settlement Agreement does not provide for exceptions to or relaxation of the deadlines if there are vacancies or absences on the Parole Board, the Court rejects these claims. It should also be noted that defense counsel stated at the fairness hearing that there is pending legislation which would add four new members to the Parole Board. Additional Parole Board members would reduce the burden on existing members, and permit more parole hearings to be conducted.

Other inmates contend that the Parole Board, in any effort to reduce quickly the backlog, conducted their parole hearings before they received their pre-parole reports. While this potential problem is not contemplated by the Settlement Agreement, inmates remain entitled to raise parole determination irregularities during the administrative and judicial appeal process.

**16.** The complaint did demand a class-wide award of nominal damages, which, as a matter of law, amounts to $1.00 per class member. *See United States ex rel. Tyrrell v. Speaker*, 535 F.2d 823, 829–30 (3rd Cir.1976). According to class counsel, a provision for an award of nominal damages was specifically excluded from the Settlement Agreement to avoid the possibility that courts would subsequently bar class members from obtaining compensatory damages in an individual action. Many class members are apparently unaware that they retain the right to file individual actions demanding compensatory damages for violations of the Act by the Parole Board, notwithstanding their status as class members. Several inmates have written to declare that they wish to pursue an individual claim for compensatory damages. It is important to note that approval of the Settlement Agreement has no effect on any class members' right to file an individual action for compensatory damages, and class members need not have filed an objection to preserve that right.

ing without any formal response or explanation, which apparently was a widespread past problem.

The new appeal process also has the capacity to hasten the resolution of claims because a favorable decision for an inmate at the administrative level obviates the need to pursue a remedy in the courts, where a case is likely to result in additional delays. Under the Settlement Agreement, the Parole Board will have to address an administrative appeal within 30 days or 45 days, depending on the category of inmate filing an appeal. Therefore, the Court finds no basis to conclude that the Settlement Agreement is unfair or unreasonable because it creates a new administrative appeal process.

The Court also disagrees with claims that the new appeal process is too confusing and intimidating. The Settlement Agreement provides that the Parole Board must post on a monthly basis in all prison libraries the names of all future past eligible inmates and future structural past eligible inmates. (Settlement Agreement at 19). Administrative appeal forms will also be available in those libraries. (Settlement Agreement at 12–15). There will be a different form for current past eligible inmates, future past eligible inmates, and future structural past eligible inmates. (Settlement Agreement at 26–28). However, completing an appeal form will only require the inmate to write his name, inmate number, the institution in which he is incarcerated, the date, and his signature. (*Ibid.*). The form for future structural past eligible inmates will additionally require the inmate to note his parole eligibility date. (Settlement Agreement at 28). Thus, the Court rejects the argument that filing an administrative appeal is a daunting task.

### vi. *Objection—The Settlement Agreement Is Too Favorable to the Parole Board*

Many inmates claim that the terms of the Settlement Agreement, in general, are too favorable to the Parole Board. The Court disagrees with this objection and concludes that it is based on inmates' unrealistic expectations of what this class action intended to accomplish. These objectors must recognize that a settlement necessarily involves compromise. Having reviewed the terms of the Settlement Agreement and the demands of the complaint, the Court finds that the Settlement Agreement, in its totality, is fair and reasonable.

This class action is responsible for fundamental changes in the manner in which the Parole Board conducts its business. The execution of the Settlement Agreement has required the Parole Board to amend prior policies and procedures, and implement new ones, in order to comply fully with the Act. (Aff. of Mario Paparozzi at ¶ 11). The Settlement Agreement provides a comprehensive remedy for all current and future inmates, and has eliminated the parole hearing backlog. These results establish that the Settlement Agreement has had a number of significant beneficial effects for inmates, and almost all of the demands in the complaint have been accomplished.

### 3. *Class Counsel Has Sufficient Knowledge to Evaluate the Merits of the Case*

"The parties must have an 'adequate appreciation of the merits of the case before negotiating.' *G.M. Corp.*, 55 F.3d at 813. To ensure that a proposed settlement is the product of informed negotiations, there should be an inquiry into the type and amounts of discovery the parties have undertaken." *In re Prudential Ins. Co.*, 148 F.3d at 319. This is the standard of the third Girsh factor.

Although formal discovery did not commence before the Settlement Agreement was executed, a significant amount of informal discovery and investigation was conducted. (Pls.' Mem. in Supp. of the Settlement Agreement at 21–22). Prior to the filing of the class action complaint, class counsel investigated the facts by interviewing more than one dozen inmates, a former employee of the Parole Board, and representatives from public service organizations. (*Id.* at 21). After the initiation of the action, the Office of the New Jersey Attorney General furnished detailed statistics concerning the extent of the parole hearing backlog. Class counsel also reviewed correspondence submitted by more than 1,000 inmates. (*Id.* at 22). As a result of the investigation and the

informal discovery process, the Court finds that class counsel possessed sufficient information to assess the issues presented and the merits of the case, and, thus, made an informed decision to settle the matter.

### 4. There Are Significant Risks that the Class Would Not Prevail on the Merits

"The fourth and fifth Girsh factors survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re Prudential Ins. Co.*, 148 F.3d at 319. Because the issue of compensatory damages is not applicable here, the fifth Girsh factor does not warrant discussion.[17] However, when considering the fourth factor, which relates to the risk of establishing liability, the Court finds that a settlement at this juncture is more prudent than further litigation.

The main obstacle facing the class is the PLRA, namely, 42 U.S.C. § 1997e(a). This statute provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In *Salaam v. Consovoy*, No. 99–5692(JEI) (D.N.J. Apr. 14, 2000), Judge Irenas addressed the applicability of that statute to an individual inmate's section 1983 claim that he did not receive a timely parole hearing. In rejecting the plaintiff's claim, Judge Irenas stated:

> The Third Circuit has not explicitly determined whether § 1983 claims that challenge a plaintiff's right to receive a timely parole hearing under state law are considered actions "with respect to prison conditions" under § 1997e(a). However, in its recent ruling that § 1997e(a) governs excessive force actions, the Third Circuit looked to Congress' definition of the term "civil action with respect to prison conditions" that is set forth in 18 U.S.C. § 3626(g)(2), another section of the PLRA. *Booth v. Churner*, 206 F.3d 289, 293–94 (3d Cir.2000); *see also Freeman v. Francis*,

196 F.3d 641, 644 (6th Cir.1999) (holding that "scope of § 1997e(a)'s exhaustion requirement is determined by the definition of a 'civil action with respect to prison conditions' as set forth in § 3626(g)(2)"). "The PLRA not only amended § 1997e(a) to include various limitations on actions such as the mandatory exhaustion requirement [ ], it also created 19 U.S.C. § 3626, which in many subsections, prevents federal courts from ordering broad prospective relief in 'any civil action with respect to prison conditions.'" *Id.*

. . . . .

> In the instant case, plaintiff claims that defendants violated his due process rights when they failed to provide him with an initial parole hearing pursuant to state law.... However, based on the *Booth* Court's broad reading of § 3626(g)(2) which resulted in excessive force claims being covered by § 1997e(a), this Court holds that due process/failure to provide hearing claims like the one at issue here, would also be governed by § 1997e(a).

[*Salaam*, slip op. at 7, 9.]

In *Severino v. Disabato*, No. 98–5122 (D.N.J. Nov. 22, 2000), Judge Rodriguez also relied on section 1997e(a) to dismiss another inmate's claim that his right to due process had been violated by the failure to provide him a timely parole hearing. Judge Rodriguez concluded: "Therefore, because plaintiff failed to take further actions, this Court finds that plaintiff has failed to exhaust the administrative remedies made available to him by the State of New Jersey. For this reason alone, plaintiff is barred under § 1997e(a) of the PLRA from maintaining his § 1983 action in this Court." *Severino*, slip op. at 7.

Although this Court need not take a position on the applicability of section 1997e(a), the fact that two other judges in this district have relied on that statute to dismiss a complaint, which alleged the same constitutional violation as the present complaint, is problematic for the class. Aside from having to overcome the potential obstacle of the PLRA, the class faces the prospect of a legal deter-

---

17. The seventh Girsh factor looks to the Defendants' ability to withstand a greater judgment. This factor is also inapplicable because no compensatory damages are sought.

mination that the due process to which inmates are entitled with respect to parole hearings does not require the Parole Board to provide a parole hearing on or before the parole eligibility date. Recently, in *Burgos v. New Jersey State Parole Bd.,* No. 99–3034(AET) (D.N.J. Aug. 7, 2000), Chief Judge Thompson rejected an inmate's claim that his right to procedural due process had been violated by the Parole Board's failure to provide him with a timely parole hearing. Because the Act and the applicable regulations permit the Parole Board to waive the deadlines, Judge Thompson concluded "that the due process plaintiff is entitled to regarding parole decisions does not include receiving a parole hearing in exact accordance with the specific time period required by N.J. Stat. Ann. § 30:4–123.55(c)." *Burgos,* slip op. at 13.

Based on these recent federal cases, class counsel recognizes that there is a significant risk that this class action would be barred by the PLRA because the Named Plaintiffs and class members may not have sufficiently exhausted administrative remedies. (Pls.' Mem. in Supp. of the Settlement Agreement at 24). Pursuant to *Burgos,* there is also the risk that the due process clause of the fourteenth amendment does not require strict compliance with deadlines set forth in the Act. Class counsel also understands this risk. (*Id.* at 29). The Court concurs with class counsel's prudent assessment of the risks inherent in further litigation, and finds that these risks create a significant incentive to settle rather than subject the class to the possibility of an adverse legal determination that would preclude any relief.

### 5. *Class Decertification Is Not Likely*

The sixth Girsh factor requires the Court to consider whether there is a risk that the class will not be maintainable through the course of the trial, and, thus, there is a risk of class decertification. *See In re Prudential Ins. Co.,* 148 F.3d at 321. In other words, the issue is whether the case will present "intractable management problems." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Class counsel has not argued that there are such problems, and the Court is not aware of any. (Pls.' Mem. in Supp. of the Settlement Agreement at 30). Although the possibility of decertification would remain if litigation continued, it is not particularly likely. Therefore, this Girsh factor does not play a significant role in the Court's determination whether to approve the Settlement Agreement.

### 6. *The Settlement Agreement Falls Within the Range of Reasonable Outcomes*

"The last two Girsh factors ask whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *In re Prudential Ins. Co.,* 148 F.3d at 322. After considering both factors, the Court finds that the Settlement Agreement is fair and reasonable.

The Settlement Agreement establishes a comprehensive scheme to remedy the parole hearing backlog, and to ensure that the backlog does not recur. Class counsel has expressed the opinion that "the proposed settlement is an excellent result under the circumstances." (Pls.' Mem. in Supp. of the Settlement Agreement at 31). *See Lake v. First Nationwide Bank,* 900 F.Supp. 726, 732 (E.D.Pa.1995) (recognizing that the court should attribute significant weight to the opinion of class counsel that a settlement is fair and reasonable). In addition, class counsel has submitted a class expert report dated January 8, 2001 from Mr. Stephen M. Latimer, an attorney and former law professor who has been litigating prison condition and parole cases since 1972. (Class Expert Report at 1). Mr. Latimer opines "that the agreement adequately protects the rights of the prisoners and will make great strides to ensure that in the future parole release hearings are timely." (*Ibid.*).

The only demands set forth in the complaint that are not granted by the Settlement Agreement are a finding that the Parole Board committed a constitutional violation, and a classwide award of nominal damages. However, the absence of both demands has been adequately explained. Again, the Parole Board refused to admit liability because it was not obligated to do so, and class counsel explained why an award of nominal

damages was not negotiated.[18] The Court does not find that these omissions are unfair or unreasonable. Although it is possible that the class could achieve more favorable relief through further litigation, a better outcome is improbable, mostly due to the risks associated with establishing liability and the fact that additional delays in the resolution of this action tend to reduce the value of any future equitable relief. Therefore, having carefully considered the terms of the Settlement Agreement in light of the Girsh factors, the Court concludes that the Settlement Agreement falls squarely within the range of fair and reasonable outcomes.

### B. *PUBLIC POLICY CONSIDERATIONS*

In addition to consideration of the Girsh factors, the Court's approval of the Settlement Agreement is supported by public policy considerations. Aside from ensuring the protection of class members' legal rights, an important consequence of approval of the settlement is that a state agency will be brought into full compliance with the law. The terms of the Settlement Agreement will introduce certainty into the administration of the parole system, replacing years of confusion and mismanagement. In a properly functioning parole system, the decision on each case will be supported by a full administrative record. Such a record will further recognize the legitimate interests of the law enforcement community and the victims of crime in any particular case.

### VI. *CONCLUSION*

For the reasons set forth above and on the record following the fairness hearing, the Court grants class certification under Rule 23(b)(2), and approves the Settlement Agreement as a fair and reasonable outcome to this class action.